JESSE S. FINLAYSON, SBN 179443
*jfinlayson@ftrlfirm.com*
LINDSAY A. ARAGÓN, SBN 254537
*laragon@ftrlfirm.com*
**FINLAYSON TOFFER
ROOSEVELT & LILLY LLP**
15615 Alton Parkway, Suite 250
Irvine, CA 92618
Telephone:  949.759.3810
Facsimile:   949.759.3812

Attorneys for Christopher R. Barclay
Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 16-04214-LT7 |
| TODD E. MACALUSO, | Chapter 7 |
| Debtor. | **CHAPTER 7 TRUSTEE'S MOTION FOR APPROVAL OF SALE AND/OR ASSIGNMENT OF ANNUITIES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF CHRISTOPHER R. BARCLAY** |
| | Hearing: |
| | Date:    April 12, 2018 |
| | Time:    10:00 a.m. |
| | Place:   Dept. 3 – Room 129 |
| | 325 West F Street |
| | San Diego, CA 92101 |
| | Judge:   Hon. Laura S. Taylor |

TO THE HONORABLE LAURA S. TAYLOR, UNITED STATES BANKRUPTCY JUDGE, AND ALL INTERESTED PARTIES:

Christopher R. Barclay (the "Trustee"), the chapter 7 trustee for the bankruptcy estate of Todd E. Macaluso (the "Debtor"), hereby moves this Court for an order (1) approving the Trustee's proposed sale and/or assignment of the bankruptcy estate's right, title, and interest in Symetra Annuity Contract No. AA0770752 ("Annuity No. 1") and Symetra Annuity Contract No. AA0771522 ("Annuity No. 2") (collectively, the "Symetra Annuities")[1] free and clear of all liens, interests or encumbrances to (a) Symetra Assigned Benefits Service Company ("SABSCO" or the "Buyer") for $627,490.64, pursuant to the terms of the Purchase and Sale Agreements dated March 10, 2018, attached to the Declaration of Christopher R. Barclay as Exhibits C and D, or (b) to any person or who entity appears at the hearing on the Motion and submits a higher acceptable bid in accordance with the Trustee's overbid procedures; (2) approving the proposed Sale Procedures; (3) confirming that the sale and/or Symetra Annuities are not subject to the California Structured Settlement Transfer Act, sections 10134-10139.5 of the California Insurance Code ("SSTA"); (4) authorizing the Trustee to execute any and all documents that may be necessary to consummate the sale; (5) waiving the 14-day stay prescribed by Federal Rules of Bankruptcy Procedure 6004(h) and 6006(d); and (6) providing such other and further relief as is proper.

## PROPOSED SALE PROCEDURES

The Buyer has agreed to purchase the Symetra Annuities for $627,490.64 cash. The proposed sale to the Buyer requires approval of the United States Bankruptcy Court and is subject to qualified overbids. The Trustee proposes the following sale procedures (the "Sale Procedures"):

---

[1] The annuities were originally issued by Safeco Life Insurance Company, which changed its name to Symetra Life Insurance Company. As such, the Safeco annuities will be referred to herein as Symetra Annuities.

1

1  **1.  <u>Pre-Bid Diligence.</u>**

2      Prospective bidders may contact the Trustee or the Trustee's counsel, Jesse

3  Finlayson and/or Lindsay Aragón to obtain information regarding the Symetra

4  Annuities.  The Trustee's email address is cbarclay@crb7trustee.com and his phone

5  number is (619) 255-1536.  Contact information for the Trustee's counsel can be found

6  in the upper left corner of the first page of this Motion.

7      **2.  <u>Overbid Deadline.</u>**

8      Any party wishing to bid on the Symetra Annuities shall submit a bid in

9  accordance with these procedures no later than **<u>April 5, 2018 at 5:00 p.m., prevailing</u>**

10  **<u>Pacific Time</u>** (the "Overbid Deadline").  In his sole and absolute discretion, the

11  Trustee shall have the right to accept additional overbids submitted prior to the

12  hearing, but after the Overbid Deadline.

13      **3.  <u>Minimum Initial Overbid.</u>**

14      The Symetra Annuities are being sold together in one transaction.  As such, any

15  overbid must be for both Symetra Annuities.  The minimum initial overbid shall be

16  **<u>$637,490.64</u>** (the "Minimum Overbid").

17      **4.  <u>Overbid Requirements.</u>**

18      Any party wishing to submit an overbid for the Symetra Annuities must deliver

19  the following two items to the Trustee's counsel by **<u>no later than the Overbid</u>**

20  **<u>Deadline</u>**:

21      (a)    A cashier's check, payable to "Christopher R. Barclay, Chapter 7 Trustee,"

22  in the amount of **<u>$63,749.64</u>** to serve as a deposit towards the total purchase price

23  (the "Deposit").

24      (b)    Evidence of the proposed buyer's financial ability to pay the full amount

25  of the overbid satisfactory to the Trustee in his reasonable discretion.

26      Any party submitting an overbid agrees that prior to the hearing date, the bidder

27  and Trustee will negotiate and agree upon the terms of a purchase and sale agreement

28

2

1    to be signed by the parties in the event the bidder has made the highest overbid

2    (the "Winning Bidder").

3         **5. <u>Multiple Bids and Auction.</u>**

4         In the event the Trustee receives multiple overbids in the same amount, the

5    Trustee will accept the overbids in the order they were received and shall advise the

6    party who submitted such overbid last that it must make a higher overbid to be eligible

7    to purchase the Symetra Annuities.

8         All parties who have submitted timely bids and otherwise satisfied the foregoing

9    requirements may participate in an auction to be conducted at the hearing on the

10    Motion as is necessary in order to increase their bid. **Each subsequent bid shall be in**

11    **increments of at least <u>$5,000.00</u>.**

12         The Trustee will request authority to sell and/or assign the Symetra Annuities to

13    the Winning Bidder, and for authority to sell the Symetra Annuities to the next highest

14    bidder if the Winning Bidder fails to perform.

15         **6. <u>Performance by the Buyer/Winning Bidder.</u>**

16         In the event of an auction, the Winning Bidder's Deposit shall be applied

17    towards the total purchase price. The Winning Bidder must tender the balance of the

18    total purchase price to the Trustee via cashier's check or immediately available funds

19    within five (5) days of the hearing on the Motion. To the extent the Winning Bidder

20    fails to perform, that bidder's entire Deposit shall be nonrefundable and forfeited to the

21    Trustee.

22         To the extent the Buyer or another overbidder is not the Winning Bidder, that

23    party's Deposit will be refunded by the Trustee.

24         **7. <u>Agreement to Terms and Sale Procedures.</u>**

25         Any overbidder's tender of the Deposit to the Trustee shall serve as that

26    overbidder's agreement with these proposed Sale Procedures and the terms of sale of

27    the Symetra Annuities discussed herein. All overbidders shall be deemed to have

28    consented to the United States Bankruptcy Court's jurisdiction and waived any right to

jury trial in connection with any disputes related to the auction or the closing of the sale. The United States Bankruptcy Court shall be the exclusive forum for any such disputes.

This Motion is made pursuant to sections 363 and 365 of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure 6004, and Local Bankruptcy Rules 2002-2 and 6004-1 on the grounds that the sale and/or assignment of the Symetra Annuities is in the best interests of the Debtor's bankruptcy estate. The Trustee will market the Symetra Annuity on the website for the National Association of Bankruptcy Trustees and to other potential buyers to whom the Trustee regularly gives notice of bankruptcy estate asset sales, but the Trustee nonetheless believes that the current offer by the Buyer is fair and reasonable and the best one received to date. Moreover, the Sale Procedures provide a process by which the Trustee could secure a higher price for the Symetra Annuities.

This Motion is based on the accompanying Memorandum of Points and Authorities, the Declaration of Christopher R. Barclay and attached exhibits, all other papers and records in the Debtor's bankruptcy case, all matters of which this Court may take judicial notice and such further evidence and argument that may be presented to the Court at or before any hearing on this matter.

**WHEREFORE**, the Trustee respectfully requests that the Court enter an order (1) approving the Trustee's sale and/or assignment of the Symetra Annuities to the Buyer or the Winning Bidder (or to the next highest bidder if the Winning Bidder fails to perform) "free and clear" of any and all liens, claims, interests and encumbrances; (2) approving the proposed Sales Procedures; (3) confirming that the sale is not subject to the SSTA; (4) authorizing the Trustee to execute any and all documents that may be necessary to consummate the sale; (5) waiving the 14-day stay prescribed by

Federal Rules of Bankruptcy Procedure 6004(h) and 6006(d); and (6) providing such other and further relief as is proper.

DATED:  March 14, 2018

FINLAYSON TOFFER
ROOSEVELT & LILLY LLP

By:_____/s/ Jesse S. Finlayson____
          Jesse S. Finlayson

Attorneys for Christopher R. Barclay
Chapter 7 Trustee

5

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ............................................................................................. 1

II.   BACKGROUND ................................................................................................ 2

      A.    The Debtor's Annuities.................................................................... 2

      B.    The Proposed Sale .......................................................................... 3

III.  ARGUMENT...................................................................................................... 5

      A.    The Court Should Approve the Sale Procedures ........................... 5

      B.    The Court Has Jurisdiction to Approve the Sale ........................... 5

      C.    The Structured Settlement Transfer Act Does Not Apply Here ............... 5

      D.    The Proposed Sale and/or Assignment is Supported by a Valid
            Business Justification and is in the Best Interests of the Estate
            and its Creditors ............................................................................. 7

      E.    Sale Free and Clear of the Liens is Appropriate ......................... 9

      F.    The Waiver of the Stay is Appropriate ...................................... 11

IV.  CONCLUSION ............................................................................................... 11

# **TABLE OF AUTHORITIES**

## CASES

*Butner v. United States*,
  440 U.S. 48 (1979) ..................................................................5

*Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*,
  94 B.R. 343 (E.D. Pa. 1988)...................................................11

*Doehring v. Crown Corp. (In re Crown Corp.)*,
  679 F.2d 774 (9th Cir. 1982)....................................................5

*FutureSource LLC v. Reuters Ltd.*,
  312 F.3d 281, 285-86 (7th Cir. 2002) ..............................11, 12

*In re America West Airlines*,
  166 B.R. 908 (Bankr. D. Ariz. 1994) .......................................7

*In re Baldwin United Corp.*,
  43 B.R. 888 (Bankr. S.D. Ohio 1984) .....................................8

*In re Crowthers McCall Pattern, Inc.*,
  114 B.R. 877 (Bankr. S.D.N.Y. 1990) .....................................5

*In re Imagine Fulfillment Servs., LLC*,
  489 B.R. 136 (Bankr. C.D. Cal. 2013) ...................................12

*In re Jackus*,
  442 B.R. 365 (Bankr. D.N.J. 2011)......................................5, 8

*In re Lionel Corp.*,
  722 F.2d 1063 (2nd Cir. 1983)............................................7, 8

*In re Office Prods. of Am., Inc.*,
  140 B.R. 407 (Bankr. W.D. Tex. 1992) .................................10

*In re Shary*,
  152 B.R. 724 (Bankr. N.D. Ohio 1993) .................................11

*In re Walter*,
  83 B.R. 14 (B.A.P. 9th Cir. 1988) ...........................................8

*In re WPRV-TV*,
  983 F.2d 336 (1st Cir. 1993) ...................................................8

*Matter of Fred Sanders Co.*,
  22 B.R. 902 (Bankr. E.D. Mich. 1982....................................10

*Matter of U.L. Radio Corp.*,
  19 B.R. 537 (Bankr. S.D.N.Y. 1982) .....................................10

*Matthews v. Liberty Assignment Corp.*,
  247 Cal. App. 4th 71 (2016).....................................................6

*Nat'l Labor Relations Bd. v. Bildisco & Bildisco*,
  465 U.S. 513 (1984) ...............................................................10

*New Haven Radio, Inc. v. Meister (In re Martin-Trigona)*,
  760 F.2d 1334 (2d Cir. 1985)...................................................8

ii

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*,
   4 F.3d 1095 (2d Cir. 1993) ...................................................................... 9
*Robertson v. Pierce (In re Huang)*,
   23 B.R. 798 (B.A.P. 9th Cir. 1982) ...................................................... 9
*Stephens Indus., Inc. v. McClung*,
   789 F.2d 386 (6th Cir. 1986) .................................................................. 8
*University Med. Ctr. v. Sullivan (In re University Med. Ctr.)*,
   973 F.2d 1065 (3d Cir. 1992) ............................................................... 9

STATUTES

11 U.S.C. § 363(b) ....................................................................................... 7
11 U.S.C. § 363(f) ...................................................................................... 10
11 U.S.C. § 365 ............................................................................................. 8
11 U.S.C. § 365(f) ........................................................................................ 8
CAL. INS. CODE § 10134 .......................................................................... 6, 7
CAL. INS. CODE § 10135 .......................................................................... 6, 7
I.R.C. § 104 ................................................................................................... 6
I.R.C. § 130 ................................................................................................... 6
I.R.C. § 5891 ................................................................................................. 1

RULES

FED. R. BANKR. P. 6004(g) Advisory Comm. Note ...................................... 13
FED. R. BANKR. P. 6004(h) ......................................................................... 12
FED. R. BANKR. P. 6006(d) ......................................................................... 12

iii

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

The Trustee submits the following Memorandum of Points and Authorities in support of the Motion:

## I.    INTRODUCTION

The bankruptcy estate of Todd E. Macaluso (the "Debtor") is presently the recipient of monthly payments from two Symetra annuities that the Debtor obtained in exchange for attorneys' fees that he earned in the early 2000s in connection with his representation of clients in personal injury actions.  The Trustee seeks an order approving the sale and/or assignment of the Symetra annuities to (a) the Buyer for $627,490.64 pursuant to the Purchase and Sale Agreements attached as Exhibit C and D to the Trustee's Declaration, or (b) the highest overbidder.

The Trustee also seeks an order that the sale and/or annuities are not subject to the California Structured Settlement Transfer Act, sections 10134-10139.5 of the California Insurance Code ("SSTA") because the SSTA places certain restrictions and requirements on the transfer of tax-free structured settlement payments made as compensation for personal injury damages.  The SSTA was enacted to protect the beneficiaries of those payments from selling them to unscrupulous factoring companies when the sale is not in their best interest.  If the annuities/sale are subject to the SSTA, and the sale does not meet the requirements of the SSTA, SABSCO will not proceed with the sale because it could be subject to a forty percent excise tax under section 5891 of the Internal Revenue Code of 1986 ("IRC").

Here, the Trustee does not believe that the sale is subject to the SSTA because the payments received by the Debtor/bankruptcy estate are not "structured settlement payment rights," as the payments are not "damages" obtained for any personal injuries that were suffered by the Debtor, but rather, as payment for outstanding attorneys' fees the Debtor earned in representing clients in personal injury actions.  Moreover, the Purchase and Sale Agreements are not "transfer agreements" within the meaning of the statute, and as such, the SSTA does not apply.

1

As set forth herein, the Trustee believes that all prerequisites for approval of the sale under the Bankruptcy Code have been satisfied and the Motion should be granted.

## II.   BACKGROUND

### A.   The Debtor's Annuities

The Debtor filed a petition for relief under chapter 7 of the United States Bankruptcy Code on July 10, 2016.  Dkt. No. 1.  On July 10, 2016, Christopher Barclay was appointed chapter 7 trustee.  Dkt. No. 6.

The Debtor identified in his Amended Schedules, filed on August 24, 2016, two Symetra annuities.  Dkt. No. 27.  Symetra Annuity No. AA0770752 ("Annuity No. 1"), dated July 27, 2000, entitles the Debtor to receive periodic payments of $2,984.25 a month for 20 years, beginning on October 11, 2017.  *See* Declaration of Christopher R. Barclay ("Barclay Dec."), ¶ 2, Ex. A.  Symetra Annuity No. AA00771522 ("Annuity No. 2"), dated October 12, 2000, entitles the debtor to receive periodic payments of $2,106.76 a month for 20 years, beginning on October 11, 2017.  *Id.*, Ex. B.

The Debtor was formerly an attorney licensed to practice law in the State of California.  *Id.*, ¶ 3.  Both Symetra Annuities were obtained pursuant to Qualified Assignments, wherein the Debtor, in his capacity as an attorney, represented a plaintiff in a lawsuit that recovered compensation for personal injuries or sickness within the meaning of sections 104(a)(1) and 130(c) of the IRC.  *Id.*, Exs. A-B.  Both the Debtor and his former clients are named as "Claimants" in the Qualified Assignments, but while the Debtor's client received funds pursuant to the Qualified Assignments on account of personal injury or sickness, the Qualified Assignments expressly state that the Debtor was to receive periodic payments to "fulfill a portion of the claimant's attorney fee obligation ...."  *See* Barclay Dec., Ex. A (Annuity No. 1, Addendum No. 1); Ex. B (Annuity No. 2, Addendum No. 2) ("Periodic payments payable to Todd E. Macaluso, Esq., and his successors and assigns, for and on behalf of Plaintiffs in discharge of Plaintiffs' obligation to pay attorney fees.").  Moreover, the Debtor signed Hold Harmless Agreements with each annuity contract, acknowledging that he was

2

1  receiving the periodic payments as satisfaction of his attorney's fees in the above-

2  referenced cases. *Id.*

3         Despite the Debtor's express acknowledgment that the periodic payments were

4  for his provision of legal services, the Debtor claimed the Symetra Annuities as exempt

5  under section 703.140(b)(10)(E) of the California Code of Civil Procedure, which

6  exempts certain annuity and other types of payments made "on account of illness,

7  disability, death, age, or length of service, to the extent reasonably necessary for the

8  support of the debtor and any dependent of the debtor …." CAL. CIV. PROC. CODE

9  § 703.140(b)(10)(E).  The Trustee filed an objection to the Debtor's claimed exemption

10  on August 30, 2017, on the grounds that the payments to be received under the

11  annuities were not received on account of illness, disability, death, age, or length of

12  service.  The Trustee also argued that even if they had been on account of age, as the

13  Debtor argued in opposition to the Trustee's objection, the annuities did not qualify

14  under any of the Internal Revenue Code sections specified in

15  section 703.140(b)(10)(E).  Dkt No. 117.

16         On October 5, 2017, the Court issued a tentative ruling stating that the Debtor's

17  right to receive the payments resulted from his provision of legal services and not a

18  personal injury of the Debtor, and on October 13, 2017, sustained the Trustee's

19  objection to the exemption and ordered that the Symetra Annuities are property of the

20  bankruptcy estate.  Dkt. Nos. 126, 128.  The Trustee has received the monthly

21  payments under Annuities Nos. 1 and 2 since October 2017.

22  **B.     The Proposed Sale**

23         The Trustee now desires to sell the Symetra Annuities to SABSCO "free and

24  clear" of any and all liens, claims, interests, and encumbrances for a total of

25  $627,490.64, subject to overbidding.  Barclay Decl., ¶ 4, Exs. C-D.  The Trustee is

26  selling the periodic payments beginning in April 2018 under Annuity Contract No. 1,

27  which equal future payments totaling $698,314.50, for a purchase price of

28  $368,684.48.  *Id.*, Ex. C.  The future payments have a discounted present value equal

to $548,812.06, which is calculated by applying the discount rate of 2.6% utilized by the Internal Revenue Service ("IRS") to value annuities in probate proceedings. The Buyer calculated the purchase price by applying a discount rate of 7.68 percent per year to payments beginning in April 2018. *Id.*

The Trustee is selling period payments beginning in April 2018 under Annuity Contract No. 2, which equal future payments of $492,981.84, for a purchase price of $258,806.16. *Id.*, Ex. D. The future payments have a discounted present value equal to $387,439.15, which is calculated by applying the discount rate of 2.6 percent utilized by the IRS to value annuities in probate proceedings. *Id.* The Buyer calculated the purchase price by applying a discount rate of 7.77 percent per year to payments beginning in April 2018. *Id.* The parties have agreed that in the event the sale is not approved by the Bankruptcy Court before the Trustee receives the April 2018 payments for Annuities Nos. 1 and 2, the amount of those payments will be deducted from the purchase price. *Id.*, Exs. C-D.

The Trustee believes the discount rate applied to the Symetra Annuities is fair and reasonable. *Id.*, ¶ 5. However, to ensure that the estate receives the best price, the Trustee intends to list the sale of the Symetra Annuities on the website for the National Association of Bankruptcy Trustees and send notice to potential buyers prior to the hearing date. *Id.* The Trustee believes that the sale will result in the realization of equity for the benefit of the Debtor's bankruptcy estate and its creditors.

As a further term of the agreement between the Trustee and the Buyer, the Court must make a specific finding that the sale and/or annuities are not subject to the SSTA. *Id.*, Exs. C-D. As explained below, the Trustee does not believe that the annuities/sale are subject to the SSTA, which only governs the sale of tax-free periodic payments, because the payments received by the Debtor are not tax-free. As such, the Trustee seeks the Court's approval of the sale.

## III.    ARGUMENT

### A.    The Court Should Approve the Sale Procedures

Bankruptcy Courts frequently consider and approve overbid procedures in connection with proposed sales of property of the estate.  *See, e.g., Doehring v. Crown Corp. (In re Crown Corp.)*, 679 F.2d 774, 775-76 (9th Cir. 1982) (noting that the district court had required specified minimum overbid amounts, deposits, and the terms of purchase agreement to be used by bidders); *In re Crowthers McCall Pattern, Inc.*, 114 B.R. 877, 879 (Bankr. S.D.N.Y. 1990) (noting that the bankruptcy court had entered an order requiring that overbids be made in specified minimum increments). Here, the proposed Sale Procedures are reasonable and intended to provide structure to the overbid process, while maximizing the value of the Symetra Annuities for the benefit of the bankruptcy estate and its creditors.  The Trustee believes that the proposed Sale Procedures are appropriate and should be approved.

### B.    The Court Has Jurisdiction to Approve the Sale

"As property of the bankruptcy estate, this Court has jurisdiction to determine whether the [Symetra] Annuit[ies] may be sold by the Trustee." *In re Jackus*, 442 B.R. 365, 369 (Bankr. D.N.J. 2011) (holding that bankruptcy court had jurisdiction to determine whether sale of annuity complied with New Jersey's structured settlement protection act).  Although the Symetra Annuities are properly categorized as property of the bankruptcy estate, the Court must look to state law to determine the exact nature of the Trustee's property interest. *See Butner v. United States*, 440 U.S. 48, 55 (1979) (holding that "property interests are created and defined by state law.").  Typically, the SSTA governs the transfers of structured settlement annuities in California, so the Court must determine whether the annuities at issue are subject to the SSTA, and if they are, whether the sale comports with requirements therein.

### C.    The Structured Settlement Transfer Act Does Not Apply Here

The SSTA does not apply here because the payments being transferred are not structured settlement payment rights.  The SSTA only applies to transfers of tax-free

structured settlement payment rights.  *See* CAL. INS. CODE § 10135.  "Structured settlement payment rights" are the "rights to receive periodic payments, including lump-sum payments, pursuant to a structured settlement agreement …." *Id.*, § 10134(l).  A structured settlement agreement is defined as: "an arrangement for periodic payment of damages established by settlement or judgment in resolution of a tort claim in which the payment of the judgment or award is paid in whole, or in part, in periodic tax-free payments rather than a lump-sum payment." *Id.*, § 10134(j).  A Structured Settlement Agreement is established pursuant to a qualified assignment agreement, which constitutes "any assignment of a liability to make periodic payments as damages ... on account of personal injury or sickness ... [where] such periodic payments are excludable from the gross income of the recipient under paragraph (1) or (2) of section 104(a)."  I.R.C. § 130.  Under section 104 of the IRC, periodic payments on account of physical injury or sickness are excludable from gross income, making the payments tax-free.  I.R.C. § 104; *see also Matthews v. Liberty Assign. Corp.*, 247 Cal. App. 4th 71, 77 (2016) ("[I]n a structured settlement the claimant receives periodic payments rather than a lump sum, and all of these payments are considered damages received on account of personal injuries or sickness and are thus excludable from income.").

Here, the payments being made under the Symetra Annuities are not structured settlement payment rights obtained as damages for personal injuries suffered by the Debtor.  Rather, as this Court has already determined in connection with the Trustee's objection to the claimed exemption, the payments are in satisfaction of outstanding attorneys' fees owed to the Debtor by his former clients, whom he represented in lawsuits where the clients received settlements for personal injuries or sicknesses that they suffered.  Both qualified assignments and settlement agreements underlying the annuities at issue state that the periodic payments are being made in satisfaction of each client's attorneys' fees obligations.  As such, because the payments to the Debtor are not on account of physical injuries or sickness suffered by him, they cannot be

6

excluded from his gross income under section 104 of the IRC, and as such, are not structured settlement payment rights within the meaning of the SSTA.

Moreover, the SSTA only applies to transfer agreements as between a "payee" and purchaser. *See* CAL. INS. CODE § 10135. A "payee" is defined as an individual who received tax-free payments pursuant to a structured settlement agreement. *Id.*, § 10134(h). The payments received by the Debtor are not tax-free, so the Purchase and Sale Agreements do not constitute the transfer of structured settlement payment rights within the meaning of the SSTA. Accordingly, the SSTA does not apply here.

**D.     The Proposed Sale and/or Assignment is Supported by a Valid Business Justification and is in the Best Interests of the Estate**

The Trustee has the right and power to sell property of the estate pursuant to section 363(b)(1) of the Bankruptcy Code, which provides that: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A proposed sale of estate property will be approved if it is in the best interests of the estate, based on the facts and history of the case. *See In re America West Airlines*, 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2nd Cir. 1983)). A court has broad discretion to authorize a sale under section 363(b). *See, e.g., In re Walter*, 83 B.R. 14, 19 (B.A.P. 9th Cir. 1988); *In re WPRV-TV*, 983 F.2d 336, 340 (1st Cir. 1993); *New Haven Radio, Inc. v. Meister (In re Martin-Trigona)*, 760 F.2d 1334, 1346 (2d Cir. 1985); *Lionel*, 722 F.2d at 1069; *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390-91 (6th Cir. 1986).

Generally, courts will find that a proposed sale is in the best interests of the estate if the trustee has a valid business justification for the proposed sale. *See e.g., Stephens Indus.*, 789 F.2d at 390; *In re Baldwin United Corp.*, 43 B.R. 888, 905 (Bankr. S.D. Ohio 1984).

The proposed sale of the Symetra Annuities is supported by a valid business justification—the generation of sale proceeds for the benefit of the bankruptcy estate's

7

creditors.  The sale of the two annuities will generate $627,490.64 for the Debtor's bankruptcy estate.  Moreover, the sale is subject to overbidding, which will allow the trustee to receive additional offers and garner the highest amount for the annuities.  "Generally speaking, an auction may be sufficient to establish that one has paid 'value' for assets of a [debtor]."  *See In re Jackus*, 442 B.R. at 372.  Additionally, the sale will allow the creditors to receive an immediate distribution instead of receiving payment on the annuities in the ordinary course over twenty years.  *See id.* (approving the trustee's sale of the estate's right to receive future payments for a lump sum rather than wait for each payment to be received).  Moreover, the Trustee is in a unique position to dispose of the Symetra Annuities.  Both annuities contain anti-assignment clauses that outside of bankruptcy would prevent the Debtor from selling the annuities.  However, because the annuities are an asset of the bankruptcy estate, the anti-assignment clauses are void in this bankruptcy proceeding and the trustee can dispose of them.

In the alternative, the proposed transaction is also appropriate under section 365 of the Bankruptcy Code.  *See* 11 U.S.C. § 365.  Section 365(a) of the Bankruptcy Code provides that the trustee, "subject to the court's approval, may assume or reject an executory contract or an unexpired lease."  *See University Med. Ctr. v. Sullivan (In re University Med. Ctr.)*, 973 F.2d 1065, 1075 (3d Cir. 1992).  Once an unexpired lease or executory contract is assumed, section 365(f) authorizes the trustee, subject to court approval, to assign the estate's rights in the contract or lease to a third party.  *See* 11 U.S.C. § 365(f).

Generally speaking, the decision to assume or reject an executory contract or an unexpired lease by a trustee is subject to review under the business judgment standard.  *See Robertson v. Pierce (In re Huang)*, 23 B.R. 798, 800 (B.A.P. 9th Cir. 1982) ("The great weight of modern authority holds that whether an executory contract should be rejected is a matter within the business judgment of the trustee."); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993).  If the Trustee's business judgment has been reasonably exercised, a court

8

should approve the assumption or rejection of an executory contract or unexpired lease. *See, e.g., Nat'l Labor Relations Bd. v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984).

The only two additional requirements for assumption and assignment of an executory contract or unexpired lease are: (1) that the debtor "promptly cure" all existing defaults under the contract or lease in question; and (2) that the proposed assignee provide adequate assurance of future performance. *In re Office Prods. of Am., Inc.*, 140 B.R. 407, 410 (Bankr. W.D. Tex. 1992) ("All of these cases also point out that the only affirmative duty imposed on the trustee by subsection (f) [of section 365] is that spelled out in subsection (f)(2), that the trustee first assume the lease, curing any outstanding defaults, and give adequate assurance of the assignee's future ability to perform.") (*citing Matter of Fred Sanders Co.*, 22 B.R. 902, 906 (Bankr. E.D. Mich. 1982); *Matter of U.L. Radio Corp.*, 19 B.R. 537, 540 (Bankr. S.D.N.Y. 1982)).

Here, the Trustee believes that the proposed transaction is most appropriately viewed as a sale. However, even if the transaction is treated as an assumption and assignment, the Trustee's decision to assume and assign the Symetra Annuities satisfies the business judgment rule for the reasons discussed above. In addition, the Trustee's proposed assumption and assignment satisfies the additional requirements of section 365(f)(2). To the Trustee's knowledge, there are no current defaults under the Symetra Annuities and no question regarding the Buyer's financial ability to perform under the Symetra Annuities in the future. Barclay Decl., ¶ 11.

**E.    Sale Free and Clear of the Liens is Appropriate**

Section 363(f) of the Bankruptcy Code expressly authorizes a debtor in possession to sell property out of the ordinary course of business "free and clear of any interest in such property of an entity," if any one of the five following conditions is met:

(1)    applicable non-bankruptcy law permits sale of such property free and clear of such interest;

9

(2)    such entity consents;

(3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  Because section 363(f) is written in the "disjunctive," any of the five conditions provides authority to sell free and clear of liens.  *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988). Moreover, courts have routinely held that lack of objection when given proper notice counts as consent.  *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) (stating that it could not be otherwise because transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold); *See In re Shary*, 152 B.R. 724, 725 (Bankr. N.D. Ohio 1993); *see also Elliot*, 94 B.R. at 345-46.

Here, the Trustee is aware of only two sets of liens and/or interests related to the Symetra annuities.  Barclay Decl., ¶ 12.  The first is a judgment debtor's lien held by ALF Recovery Trust ("ALF"), which obtained the lien on the Debtor's assets pursuant to section 708.110(d) of the California Code of Civil Procedure when it served the Debtor with an Order to Appear for Examination on or about June 22, 2016.  *Id.*  The judgment lien, however, is a preference and subject to avoidance under 11 U.S.C. § 547, as it was obtained within the ninety days before the Debtor filed for bankruptcy protection.  *In re Imagine Fulfillment Servs., LLC*, 489 B.R. 136, 143 (Bankr. C.D. Cal. 2013) ("A trustee or debtor in possession may avoid certain transfers made within 90 days before the bankruptcy filing that would otherwise prefer one or more creditors at the expense of other creditors.").

The second set of liens are held by the Internal Revenue Service and the California Franchise Tax Board and relate to income taxes owed by the Debtor. Barlcay Decl., ¶ 13.  Both the IRS and the FTB are receiving notice of this motion and

10

will have an opportunity to object. *Id.* The Trustee does not anticipate that they will object, however, because the Trustee's liquidation of these assets provides a substantial benefit to these creditors. *Id.* Unless the IRS or FTB file an objection to the sale, the Court can treat the failure to oppose as consent to the transfer free and clear of liens under section 363(f)(2). *See FutureSource LLC*, 312 F.3d at 285-86.

### F.    The Waiver of the Stay is Appropriate

Under Federal Rule of Bankruptcy Procedure 6004(h) and 6006(d), an order authorizing the sale of property is stayed for 14 days after the entry of the order, unless a court orders otherwise. FED. R. BANKR. P. 6004(h) & 6006(d). The Advisory Committee Notes to the rule state that a court may, in its discretion, order that the stay is inapplicable so that the sale may take place immediately upon entry of the order. FED. R. BANKR. P. 6004(g) Advisory Comm. Note.

Waiver of the stay imposed by Rule 6004(h) and 6006(d) is appropriate under the present circumstances. Barlcay Decl., ¶ 14. The Trustee does not anticipate any substantive opposition to the Motion. Under those circumstances, there is no need to delay the closing to allow parties to consider their appellate options. The only parties with a vested interest in the Symetra Annuities are the Trustee and the Buyer, and they obviously consent to the sale of the Annuities. Accordingly, waiver of the stay will not disadvantage any party.

Accordingly, due to the absence of any prejudice to interested parties and the benefit to the bankruptcy estate and its creditors in allowing the sale to close quickly, the Trustee respectfully submits that waiver of the Rule 6004(h) and 6006(d) stay is appropriate.

## IV.    CONCLUSION

For these reasons, the Trustee requests an (1) approving the Trustee's proposed sale and/or assignment of the Symetra Annuities to the Buyer or the Winning Bidder free and clear of all liens, claims, interests and encumbrances; (2) approving the proposed Sale Procedures; (3) confirming that the sale is not subject to the SSTA;

11

(4) authorizing the Trustee to execute any and all documents that may be necessary to consummate the sale; (5) waiving the 14-day stay prescribed by Federal Rules of Bankruptcy Procedure 6004(h) and 6006(d); and (6) providing such other and further relief as is proper.

DATED:  March 14, 2018

FINLAYSON TOFFER
ROOSEVELT & LILLY LLP

By:_____/s/ Jesse S. Finlayson_____
Jesse S. Finlayson

Attorneys for Christopher R. Barclay
Chapter 7 Trustee

## DECLARATION OF CHRISTOPHER R. BARCLAY

I, Christopher R. Barlcay, declare as follows:

1.      I am the chapter 7 trustee for the bankruptcy estate of Todd E. Macaluso. I submit this Declaration in support of the foregoing Motion.  Capitalized terms in this Declaration that are not otherwise defined shall have the meaning given to them in the Motion.  If called as a witness, I could and would testify accurately and competently to the contents of this Declaration.

2.      The Debtor is the recipient of payments from Symetra Annuity No. AA0770752 ("Annuity No. 1") and Symetra Annuity No. AA00771522 ("Annuity No. 2").  Symetra Annuities Nos. 1 and 2 are attached hereto as Exhibits A and B.

3.      Based on my information and belief, the Debtor was formerly an attorney licensed to practice law in the State of California.

4.      I propose to sell the Symetra Annuities to SABSCO for a total of $627,490.64, subject to overbidding.  True and correct copies of the Purchase and Sale Agreements, dated March 10, 2018, are attached hereto as Exhibits C and D.

5.      The parties arrived at the sale price by using a discount rate of approximately 7.70 percent.  I believe the discount rate applied to the Symetra Annuities is fair and reasonable.  However, to ensure that the estate receives the best price, I intend to list the sale of the Symetra Annuities on the website for the National Association of Bankruptcy Trustees and to send notice to potential buyers prior to the hearing date.

6.      I believe all prerequisites for approval of the sale under applicable provisions of the Bankruptcy Code have been satisfied and, therefore, request that the Court grant the Motion.

7.      I have satisfied each of the applicable elements governing the proposed sale of the Symetra Annuities and I have sound business reasons for entering into and seeking consummation of the sale.

8.     First, I believe, based on my experience, that the proposed sale price of $627,490.64 is a fair offer based on the approximately 7.70 percent discount rate applied by SABSCO.

9.     Second, at all relevant times, the Buyer and I have engaged in an arms' length transaction in conjunction with my efforts to market the Symetra Annuities.

10.    Third, the sale of the Policy will benefit the Debtors' bankruptcy estate by generating equity for the estate and its creditors.  Instead of receiving payments over a twenty-year period, the estate and its creditors will receive the payments in one lump sum.  Moreover, I am in a unique position to dispose of the Symetra Annuities.  Both annuities contain anti-assignment clauses that outside of bankruptcy would prevent the Debtor from selling the annuities.  However, because the annuities are an asset of the bankruptcy estate, the anti-assignment clauses are void in this bankruptcy proceeding and therefore, allow me, as the trustee, to dispose of the assets.

11.    To the best of my knowledge, there are no current defaults under the Symetra Annuities.  Based on the fact that the Buyer presently owns the Symetra Annuities and is paying the estate $627,490.64 to acquire the periodic payments, I believe the Buyer can and will perform all future obligations under the policy.

12.    Here, I am aware of only two sets of liens and/or interests related to the Symetra annuities.  The first is a judgment debtor's lien held by ALF Recovery Trust ("ALF"), which obtained the lien on the Debtor's assets pursuant to section 708.110(d) of the California Code of Civil Procedure when it served the Debtor with an Order to Appear for Examination on or about June 22, 2016.  It is my understanding, however, that the lien is a preference and subject to avoidance under 11 U.S.C. § 547, as it was obtained within the ninety days before the Debtor filed for bankruptcy protection.

13.    The second set of liens are held by the Internal Revenue Service and the California Franchise Tax Board and relate to income taxes owed by the Debtor.  Both the IRS and the FTB are receiving notice of this motion and will have an opportunity

14

1  to object.  I do not anticipate that they will object, however, because the liquidation of
2  these assets provides a substantial benefit to these creditors.

3       14.    I believe there is cause to waive the 14-day stay prescribed by Federal
4  Rule of Bankruptcy Procedure 6004(h) and 6006(d) because waiving the stay will
5  expedite a consummation of the sale.

6       I declare under penalty of perjury that the foregoing is true and correct.
7  Executed on March 11, 2018, at San Diego, California.

8                                                   CHRISTOPHER R. BARCLAY
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

Todd Macaluso

AA0770752

MACALUSO_0001

Annuitant

Contract Number

Contract Date



# SAFECO

# Annuity Contract

- ■ SAFECO Life Insurance Company will pay an annuity in the amount and on the due dates specified in the Schedule of Benefits.

- ■ This contract has been issued in consideration of the application and payment of the first premium.

- ■ Signed for SAFECO Life Insurance Company, a stock company, at its Home Office on the contract date.

Randall H. Talbot
President

R.A. Pierson
Sr. Vice President and Secretary

## IMMEDIATE ANNUITY

Non-Participating (No Dividends).

Single Premium.

Benefits payable periodically (see schedule).

**10-DAY RIGHT TO EXAMINE CONTRACT:** Within 10 days after this contract is first received, it may be canceled by delivering or mailing it to the agent through whom it was purchased, or to our Home Office. Upon cancellation, all money will be refunded. THIS IS A LEGAL CONTRACT. PLEASE READ IT THOROUGHLY.

SAFECO Life Insurance Company COPY Home Office: Redmond, Washington 98052

™ A Trademark of SAFECO Corporation.

L-6415 7/84

MACALUSO_0002

| | |
|---|---|
| Annuitant | **TODD MACALUSO** |
| Contract Number | **AA0770752** |
| Contract Date | **JULY 27, 2000** |
| Premium | **$1.00 and other net consideration** |
| Date Of Birth | REDACTED |
| Sex | **MALE** |

---

Schedule of Benefits

| Amount | Due Dates |
|---|---|
| **$2,984.25** | **TODD MACALUSO** |
| | **On OCTOBER 11, 2017 and on the 11th day of each following month until 240 payments have been made.** |

L-6416 6/97

MACALUSO_0003

## PROVISIONS



**Definitions**

In this contract SAFECO Life Insurance Company is referred to as "we," "us," or "our."

**Entire Contract**

This contract and the application are the entire contract. A copy of the application is attached. All statements in the application are treated as representations and not warranties. No statement will void this contract or be used in defense of a claim unless the statement is in the application.

**Effective Date**

The effective date of this contract is the same as the contract date.

**Conformity to State Law**

This contract shall be construed in accordance with and is amended to conform to the laws of the state in which the owner resides at the time of application.

**Owner**

This contract's owner is named in the application. The owner may name a new owner or may name a successor to become owner if the owner dies. Such a change will become effective when written notice is received and recorded at our home office.

**Assignment**

An absolute assignment will make the assignee the owner of this contract. We will not be responsible for the validity of any assignment. We will not be bound by an assignment until written notice from the owner of the contract is recorded at our home office. This contract may not be assigned as collateral for any loan or indebtedness.

**Misstatement of Age or Sex**

If the birthdate or sex of the annuitant has been misstated, any amounts payable will be adjusted. The adjustment will be to an amount the premium would have purchased using the correct birthdate and sex, using the rates in effect on the contract date. We may recoup any overpayment, with compound interest at the rate of 6% per year, by charging against payments made after the adjustment. We will refund any underpayment with compound interest at the rate of 6% per year.

**Benefits**

The annuity benefits payable under this contract are those shown in the schedule of benefits. This contract has no cash surrender value. Benefit payments may not be advanced, accelerated, commuted, or encumbered by the annuitant or any beneficiary.

**Beneficiary**

The beneficiary is as named in the application unless changed by the owner. There may be more than one beneficiary.

**Annuity Payments**

Benefit payments will be made to the annuitant unless otherwise designated in the application. We will make all benefit payments under this contract at our home office by check. We may require evidence that the annuitant is alive on the due date of each payment. If the annuitant dies, any remaining payments will be made to the beneficiary. If there is more than one beneficiary, payments will be made jointly to all surviving beneficiaries. If no beneficiaries live to receive all payments, any remaining payments will be made to the estate of the last surviving beneficiary. If no beneficiaries are alive when the annuitant dies, benefit payments will be made to the estate of the annuitant.

**Expiration**

This contract will expire when the last payment set forth on the schedule of benefits has been made.

L-6417 R1 3/90

MACALUSO_0004

 **SAFECO®**

SAFECO LIFE INSURANCE COMPANY
P.O. BOX 34690
SEATTLE, WASHINGTON 98124-1690



## ENDORSEMENT

The provisions of this annuity contract, captioned Assignment, are replaced by the following:

An absolute assignment of this annuity contract will make the assignee the new owner of this annuity contract. We will not be bound by an assignment until written notice from the owner of this annuity contract is recorded at our home office.

No payment under this annuity contract may be accelerated, deferred, increased, or decreased, or anticipated, sold, assigned, or encumbered in any manner by the annuitant (or either joint annuitant) or any other recipient of the payment.

Effective on the Contract Date, unless a different date is shown here: _____

SAFECO Life  Insurance Company

*R. A. Pierson*
R.A. Pierson
Sr. Vice President and Secretary

UNC-26 5/94

* A registered trademark of SAFECO Corporation



### NAME CHANGE ENDORSEMENT

This Endorsement is made a part of, and should be attached to your policy, contract or certificate (contract).

Hereafter, all contract references to Safeco Life Insurance Company are substituted with Symetra Life Insurance Company.

All terms and conditions or benefits of your current contract, policy or certificate remain the same and all rights and obligation therein are those of Symetra Life Insurance Company.

Signed for Symetra Life Insurance Company by:

Randall H. Talbot, President

George Pagos, Secretary

LA-4035 9/04


# SAFECO

**APPLICATION**
**SINGLE PREMIUM**
**IMMEDIATE ANNUITY**

**SAFECO LIFE INSURANCE COMPANY**
P O BOX 34690
SEATTLE WASHINGTON 98124-1690

**1. Proposed Annuitant**

(a) TODD MACALUSO
   First        Middle        Last

(b) 2125 Via Sinalda
   No            Street

(c) La Jolla, CA   92037
   City and State          ZIP Code

(d) Date of Birth  REDACTED   ☐ Female  ☒ Male
                M  D  Y

(e) Social Security No  REDACTED

**2. Joint Annuitant (if any)**

(a) (none)
   First        Middle        Last

(b) _____
   No            Street

(c) _____
   City and State          ZIP Code

(d) Date of Birth  _____  ☐ Female  ☐ Male
                M  D  Y

(e) Social Security No  _____

(f) Relationship to Proposed Annuitant _____

**3. Owner, If Other Than Proposed Annuitant, is:**

(a) SAFECO Assigned Benefits Service Co.
   First        Middle        Last

(b) 15411 NE 51st Street
   No            Street

(c) Redmond, WA   98052
   City and State          ZIP Code

(d) Owner is  ☐ Individual  ☒ Corporation  ☐ Partnership
   ☐ Trustee

**For Home Office Use Only**

_ _ _ _ _ SS # Corrected to read REDACTE

**Note:** *If one or more of the benefits applied for cease upon death of the annuitant, then it is essential that an authentic record of annuitant's birth be submitted prior to the first annuity payment. This record should be a birth certificate, if available; otherwise a certified copy of church or baptismal record, or certified copy of family record, such as reference to annuitant in family Bible, will be acceptable.*

I (We) represent that the statements and answers recorded on this application are full, complete and true, to the best of my (our) knowledge and belief, and shall form a part of the annuity contract issued hereon, and my (our) acceptance of such annuity shall constitute my (our) ratification of any additions, corrections or changes made in the space provided "For Home Office Use Only " The owner of this annuity will be the applicant  Application is made with the knowledge and consent of the proposed annuitant  I (We) agree that any annuity contract issued upon this application shall be considered a contract of the State in which the owner resides at the time of application

**Agent:** To the best of your knowledge, does the annuity applied for replace any other annuity or life insurance presently in force?  ☐ Yes  ☒☒ No

X _____
   Signature of Agent

_ Protected Settlements Inc._ _ _ 10-96-9190
Agency                          Stat #

February 1, 2001_ Charlotte, North Carolina
Dated At (City State)   On (Month, Day)
LU 350 R1 6/90

**4. Plan Applied For**
(describe benefits to be paid and dates to commence, attach an additional sheet if more space is required )

**5.** ☒ Check if additional sheet is attached

**6. Beneficiary**

The Estate of Todd Macaluso
   First        Middle        Last

Date of Birth     Relationship     Social Security No

**7. Contingent Beneficiary**

_____
   First        Middle        Last

Date of Birth     Relationship     Social Security No

**8.** Do you intend the replacement or change of any of your existing life insurance or annuity policies in connection with this application for an annuity?  ☐ Yes  ☒ No

**OWNER'S ADDRESS**
5069 154th PL NE
Redmond, WA 98052

Redmond, WA   Feb. 9  , 2001
Dated At (City, State)      On (Month, Day)

X _____

X  Vice President
   Title

* If applicant is corporation or partnership, a corporate officer other than proposed annuitant must  sign and state title.

MACALUSO_0007



## Application Attachment
**SAFECO** Life Insurance Company
P O Box 34690, Seattle, WA 98124-1690

Single Premium Immediate Annuity

**Annuitant:** TODD MACALUSO

**Joint Annuitant:** (none)

── **Temporary Benefits** ──

| Benefit Type * | Initial Benefit Amount | Date of First Payment | Number of Payments | Payment Interval | Date of Last Payment | Increase Amount | Increase Interval |
|---|---|---|---|---|---|---|---|
| G | $2,984.25 | 10/11/2017 | 240 | monthly | 09/11/2037 | | |

* L = Life Contingent        G = Guaranteed







## S A F E C O

## IMMEDIATE ANNUITY

Non-Participating (No Dividends).

Single Premium.

Benefits payable periodically (see schedule).

SAFECO Life Insurance Company, 15411 NE 51st Street, Redmond, WA 98052, (800) 426-7355

## QUALIFIED ASSIGNMENT

"**Claimant**" REDACTED      and Todd Macaluso

"**Assignor**" Royal Insurance Company of America

"**Assignee**"      **SAFECO Assigned Benefits Service Company**

"**Annuity Issuer**"      **SAFECO Life Insurance Company**

"**Effective Date**"      October 26, 2000 SaH

01 FEB -5 PM 3:47

This Agreement is made and entered into by and between the parties hereto as of the Effective Date with reference to the following facts:

A.  Claimant has entered into a settlement agreement, a compromise settlement of a workers' compensation claim, or a release dated October 26, 2000. _____ (the "Settlement Agreement") that provides for the Assignor to make certain periodic payments to or for the benefit of the Claimant as stated in Addendum No. 1 (the "Periodic Payments"); and

B.  The parties desire to effect a "qualified assignment" within the meaning and subject to the conditions of Section 130(c) of the Internal Revenue Code of 1986 (the "Code").

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the parties agree as follows:

1.  The Assignor hereby assigns and the Assignee hereby assumes all of the Assignor's liability to make the Periodic Payments. The Assignee assumes no liability to make any payment not specified in Addendum No. 1.

2.  The Periodic Payments constitute either (a) amounts received under a workers' compensation act as compensation for personal injuries or sickness within the meaning of Section 104(a)(1) and 130(c) of the Code; or (b) damages (other than punitive damages) on account of personal injury or sickness in a case involving physical injury or physical sickness within the meaning of Sections 104(a)(2) and 130(c) of the Code.

3.  The Assignee's liability to make the Periodic Payments is no greater than that of the Assignor immediately preceding the Agreement. Assignee is not required to set aside specific assets to secure the Periodic Payments. The Claimant has no rights against the Assignee greater than a general creditor. None of the Periodic Payments may be accelerated, deferred, increased or decreased and may not be anticipated, sold, assigned or encumbered.

4.  Discharge of the liability to make any Periodic Payment shall be determined by the payment mode in which the payment is made. If the payment mode is by check sent by the United States mail, discharge occurs upon the mailing of a valid check, in the amount of such payment, to the claimant's address as shown in the assignee's records. If the payment mode is by electronic funds transfer, discharge occurs upon the electronic transferring of funds, in the amount of such payment, into the claimant's bank account as shown in the assignee's records. If any other payment mode is employed, discharge occurs upon transmitting funds, in the amount of such payment, as appropriate for that payment mode to the claimant's address or account as shown in the assignee's records. Whatever mode of payment is used for any Periodic Payment, the assignee shall make payment on or before the due date of such payment.

*(See Over)*

LN-370 5/98

5.  This Agreement shall be governed by and interpreted in accordance with the laws of the State of California _____.

6.  The Assignee may fund the Periodic Payments by purchasing a "qualified funding asset" within the meaning of Section 130(d) of the Code in the form of an annuity contract issued by the Annuity Issuer All rights of ownership and control of such annuity contract shall be and remain vested in the Assignee exclusively. The Assignee shall not sell, change the ownership of or in any other way encumber the "qualified funding asset," or grant to any creditor priority rights in the "qualified funding asset"

7.  The Assignee may have the Annuity Issuer send payments under any "qualified funding asset" purchased hereunder directly to the payee(s) specified in Addendum No. 1. Such direction of payments shall be solely for the Assignee's convenience and shall not provide the Claimant or any payee with any rights of ownership or control over the "qualified funding asset" or against the Annuity Issuer.

8.  Assignee's liability to make the Periodic Payments shall continue without diminution regardless of any bankruptcy or insolvency of the Assignor.

9.  In the event the Settlement Agreement is declared terminated by a court of law (or, for workers' compensation, the presiding workers' compensation authority) or in the event that Section 130(c) of the Code has not been satisfied, this Agreement shall terminate. The Assignee shall then assign ownership of any "qualified funding asset" purchased hereunder to Assignor, and Assignee's liability for the Periodic Payments shall terminate.

10. This Agreement shall be binding upon the respective representatives, heirs, successors and assigns of the Claimant, the Assignor and the Assignee and upon any person or entity that may assert any right hereunder or to any of the Periodic Payments.

Assignor: Royal Insurance Company of America

By: _____
         *Authorized Representative*

Title: Claims Coordinator

Assignee: SAFECO Assigned Benefits Service Co.

By: _____
         *Authorized Representative*

Title: Vice President

 **SAFECO®**

## Addendum No. 1
## Description of Periodic Payments

Payee: REDACTED

# REDACTED

The claimant and their attorney have an agreement to direct periodic payments to
Todd Macaluso the settlement proceeds to fulfill a portion of the claimant's
attorney fee obligation as follows:

Payee: Todd Macaluso

$2,984.25  Monthly for 20 years guaranteed beginning on 10/11/2017.

01 FEB -5 PM 3:47

**Initials**

**Assignor:** _____

**Assignee:** _____

® A registered trademark of SAFECO Corporation
MACALUSO_0012

# SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE ("Settlement Agreement") is made and entered into on                                    2000, by and between

## CLAIMANT: REDACTED

**INSURED:** Westfield America Inc

**INSURER:** Royal Insurance Company of America

### Recitals

A  The claimants have presented a claim against the insured arising from an accident which occurred from on or about March 11, 1999

B  The insurer is the liability insurer of the insured and as such would be obligated to pay any judgment against the insured that is covered by its policy

C  The parties desire to enter into this Settlement Agreement in order to provide for certain payments in full settlement and discharge of all claims which are or might have been the subject of the claim, upon the terms and conditions set forth herein

### Agreement

The parties hereby agree and follows

### 1.  Release and Discharge

In consideration of the payments called for herein, the claimant, claimant's heirs, administrators, executors, assigns or successors completely releases and forever discharge the insured, and the insurer, and the past, present and future officers, directors, stockholders, attorneys, agents, servants, representatives, employees. subsidiaries, affiliates, partners, predecessors and successors in interest, and assigns and all other persons, firms or corporations with whom any of the former have been, are now or may hereafter be affiliated, of and from any and all past, present or future claims, liens, demands, costs, obligations, actions, causes of action, liens wrongful death claims, rights, damages, costs, losses of services, expenses and compensation of any nature whatsoever, whether based on a tort, contract, or other theory of recovery, and whether for compensation or punitive damages, which the claimant now have, or may hereafter accrue to otherwise be acquired, on account of, or in any way growing out of, including, without limitation, any and all known or unknown claims for bodily and personal injuries to the claimant, and the consequences thereof, which have resulted or may result from the alleged occurrence

01 FEB -5 PM 3:47

This release, on the part of the claimants, shall be a fully binding and complete settlement between the claimants and the insured, and the insurer and all parties represented by or claiming through the claimant save only the executory provisions of this Settlement Agreement.  The Claimant agrees to defend, indemnify and hold the insured , their counsel and the insurer harmless from and against all such claims, liens, demands, obligations, action, damages, costs and expenses.

### 2.  Payments

In consideration of the release set forth above, and for other good and valuable consideration, the insurer on behalf of the insured hereby agrees to cause to be made payable to the claimant the following sums in the following manner:

#### a) Cash Payments

The Insurer shall pay to REDACTED            and Todd Macaluso as attorney the sum of Seventy Five Thousand and 00/100 ($75,000.00) Dollars which sum shall include the cash portion and disbursements incurred by claimant's attorney in the prosecution of this claim together with all liens against recovery herein

b) **Annuity** with guaranteed payments as follows as purchased from SAFECO Life Insurance Company, with AM Best rating of A+ Superior, with guaranteed payments as follows:

Payee: REDACTED

# REDACTED

........The claimant and their attorney have an agreement to direct periodic payments to Todd Macaluso the settlement proceeds to fulfill a portion of the claimants attorney fee obligation as follows:

Payee: Todd Macaluso

~~$2,758.05~~ Monthly for 20 years guaranteed beginning on 10/11/2017.

#2,984.25

All sums set forth herein constitute damages on account of physical injuries or sickness, within the meaning of Section 104 (a)(2) of the Internal Revenue Code of 1986, amended.

### 3.  Claimant's Rights to Payments

The claimant is disabled from and may not accelerate or defer said payments at any time or vary in any respect the payments; receive the present discounted value of future payments; have any control of the investments or funds from which payments are made; have any right to increase or decrease the payments; change or modify the

-2-

MACALUSO_0014

manner, mode or method of meeting any payments or discharging any obligations set forth in this agreement, have the power to sell, mortgage, encumber, or anticipate the future payments, or any part thereof, by assignment or otherwise

4   **Qualified Assignment**
    The parties hereto acknowledge and agree that the insured and/or the insurer may make a "qualified assignment" within the meaning of Section 130(c) of the Internal Revenue Code of 1986, of the insured's and/or the insurer's liability to make the periodic payments required herein   Any such assignment, if made shall be accepted by the claimant without right of rejection and shall completely release and discharge the insured and the insurer from such obligations hereunder as are assigned to SAFECO Assigned Benefits

    The claimant recognizes that, in the event of such as assignment, the assignee shall be the sole obligor with respect to the obligations assigned, and that all other releases that pertain to the liability of the insured and the insurer shall thereupon become final, irrevocable and absolute

    If the liability to make the periodic payments is assigned by way of a "qualified assignment"

    a   The periodic payments from the assignee cannot be accelerated, deferred, increased or decreased by the claimant

    b   The assignee does not provide to the claimant rights against the assignee that are greater than those of a general creditor; and

    c   The assignee's obligation for payment of the periodic payments is no greater than the obligation of the person originally liable (whether by suit or agreement) for payment and from whom the obligation was assigned

5.  **Right to Purchase an Annuity**

    The assignee may fund its liability to make periodic payments through the purchase of an annuity policy from SAFECO Life Insurance Company. The assignee shall be the owner of the annuity policy, and shall have all rights of ownership   The assignee may have the annuity carrier mail payments directly to the claimant.  The claimant and/or his/her legal representatives shall be responsible for maintaining the currency of the proper mailing address to the assignee

6   **Attorney's fees**

    Each party hereto shall bear all attorney's fees and costs arising from the actions of its counsel in connection with the Complaint, this Settlement Agreement, and the matters and documents referred to herein, the filing of a Dismissal of the Complaint, and all related matters

-3-

**7  Claimant's Beneficiary**

Any payments to be made after the death of the annuity payee in accordance with the terms of this Settlement Agreement shall be made to the beneficiary designated herein or to such beneficiary as may be requested in writing by the annuity payee to the owner of the annuity   If no beneficiary is designated herein or requested by the annuity payee, the payments shall be made to the estate of the annuity payee   No request made under this section nor any revocation thereof shall be effective unless it is in writing and delivered to the owner of the annuity   Payments due after the death of the annuity payee shall be made to

**8  Discharge of Obligation**

The obligation of the assignee to make each installment payment shall be discharged upon the mailing of a valid check in the amount of such payment to the address designated by the party to whom the payment is required to be made under this Settlement Agreement.  Checks that have not been negotiated will be replaced

**9  Delivery of Dismissal with Prejudice**

Concurrently with the execution of this Settlement Agreement, counsel for the claimant has delivered to counsel for the insured, or counsel for the insurer an executed Delivery of Dismissal with Prejudice of the civil action described in recital A above.  The claimant has authorized there attorneys to execute this Delivery of Dismissal with Prejudice on there behalf and hereby authorizes counsel for the insured or counsel for the insurer to file said Delivery of Dismissal with Prejudice with the court and enter it as a matter of record.

**10  Warranty of Capacity of Execute Agreement**

The claimant represents and warrants that no other person or entity has had any interest in the claims. demands, obligations, or causes of action referred to in this Settlement Agreement except as otherwise set forth herein and that they have the sole right and exclusive authority to execute this Settlement Agreement and receive the sum specified in and that they have not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations, or causes of action referred to in this Settlement Agreement.

**11  Entire Agreement and Successors in Interest**

This Settlement Agreement contains the entire agreement between the claimant, the insured and the insurer with regard to the matters set forth herein and shall be binding upon and enure to the benefit of the executors, administrators, personal representatives, heirs, successors and assigns of each.

-4-

MACALUSO_0016

12   **Representation of Comprehension of Document**

In entering into this Settlement Agreement the claimant represents that they have relied upon the legal advice of there own attorneys who are the attorneys of there choice and that the terms of this Settlement Agreement have been completely read and explained to them by there attorneys, and that those terms are fully understood and voluntarily accepted by them

13   **Governing Law**

This Settlement Agreement shall be construed and interpreted in accordance with the laws of the State of California

14   **Section 152 Waiver**

Claimants understands that they may have suffered injuries or damages that are Unknown to there at present and the unknown complication may arise in the future Claimant acknowledges that the sum paid in consideration of the Settlement Agreement is intended to and does release and discharge any claims by claimant's against the insureds and their insurer in regard to such unknown or future complication and claimant's does hereby waive any rights under Section 1542 of the California Civil Code which reads as follows:

"A general release does not extend to claims which the creditor does not known or suspect to exist in their favor at the time of executing the release, which if known by them must have materially affected their settlement with the debtor"

15.   **Additional Documents**

All parties agree to cooperate fully and execute any and all supplementary documents and take all additional actions which may be necessary or appropriate to give full force and effect to the basic terms and intents of this Settlement Agreement

MACALUSO_0017

16  **Effectiveness**

This Settlement Agreement shall become effective following execution by all of the parties and approval of the court if required.

Executed at _San Diego_ this _26_ day of _October_ 2000.

_Claimants attorney_

# REDACTED

# REDACTED

**Royal Insurance Company of America**

By: _Paul Bush_

Title _Claims Coordinator_

01 FEB -5  PM 3:47

-6-



SAFECO LIFE INSURANCE COMPANY
P.O BOX 34690
SEATTLE, WA 98124

# PERIODIC PAYMENT OF ATTORNEY FEE
## HOLD HARMLESS AGREEMENT

Name of Claimant(s) ____ REDACTED _____

Name of Attorney of Record ____ Todd Macaluso _____

Name of Law Firm ____ Todd Macaluso _____

Date of Settlement Agreement _____

SAFECO Life Insurance Company and SAFECO Assigned Benefits Service Company cannot provide tax advice to me and/or my Firm, so the following information should not be construed as tax advice.

I understand that receiving the attorney fee due on the above-referenced case under a structured settlement might not achieve the tax consequences that I and/or my Firm desires. I am aware that the Internal Revenue Service has challenged certain tax return reporting positions taken by attorneys who have structured their attorney fee and I have considered the risks and possible impact.

I understand and agree that all tax consequences (federal or state) will be borne by me and/or my Firm. I also agree that, regardless of when taxes are due on the fee, I and/or the Firm agree that I and/or the Firm will be paid in accordance with the periodic payment terms of the attorney fee agreement with the above-named Claimant under the structured settlement, and that, in no event, may the periodic payments be accelerated, deferred, increased, decreased, assigned, or commuted to a lump sum.

I and/or the Firm do hereby indemnify and agree to hold harmless SAFECO Life Insurance Company, SAFECO Assigned Benefits Service Company, their employees, attorneys, agents and affiliates of and from any costs, penalties, fees, or damages, including withholding taxes, which may arise in connection with any taxes incurred by me and/or the Firm as a result of structuring the attorney fee.

Under penalties of perjury, I certify that the social security or Tax ID number listed below is correct and that I am not subject to backup withholding either because I have not been notified by the IRS that I am subject to backup withholding, or the IRS has notified me that I am no longer subject to backup withholding.

8-23-00
Date

REDACTED
Payee Social Security

Signature of Attorney/Partner/Officer

TODD Macaluso
Printed Name

*Partner

*If the Attorney of Record on this case practices as part of a Partnership or P.C., a partner or officer must also sign this Hold Harmless Agreement.

LN-379 8/97

®Registered trademark of SAFECO Corporation

MACALUSO_0019

# EXHIBIT B

Todd Macaluso

AA0771522

MACALUSO_0093

Annuitant

Contract Number

Contract Date



# SAFECO™

# Annuity Contract

■ SAFECO Life Insurance Company will pay an annuity in the amount and on the due dates specified in the Schedule of Benefits.

■ This contract has been issued in consideration of the application and payment of the first premium.

■ Signed for SAFECO Life Insurance Company, a stock company, at its Home Office on the contract date.

Randall H. Talbot
President

R.A. Pierson
Sr. Vice President and Secretary

## IMMEDIATE ANNUITY

Non-Participating (No Dividends).

Single Premium.

Benefits payable periodically (see schedule).

10-DAY RIGHT TO EXAMINE CONTRACT: Within 10 days after this contract is first received, it may be canceled by delivering or mailing it to the agent through whom it was purchased, or to our Home Office. Upon cancellation, all money will be refunded. THIS IS A LEGAL CONTRACT. PLEASE READ IT THOROUGHLY.

SAFECO Life Insurance Company  Home Office: Redmond, Washington 98052

™ A Trademark of SAFECO Corporation.

L-6415 7/84

| | |
|---|---|
| Annuitant | **TODD E MACALUSO** |
| Contract Number | **AA0771522** |
| Contract Date | **OCTOBER 12, 2000** |
| Premium | **$1.00 and other net consideration** |
| Date Of Birth | **REDACTED** |
| Sex | **MALE** |

### Schedule of Benefits

| Amount | Due Dates |
|---|---|
| $2,106.76 | **TODD E MACALUSO**<br><br>On OCTOBER 11, 2017 and on the 11th day of each following month until 240 payments have been made. |

L-6416 6/97

## PROVISIONS



| | |
|---|---|
| **Definitions** | In this contract SAFECO Life Insurance Company is referred to as "we," "us," or "our." |
| **Entire Contract** | This contract and the application are the entire contract. A copy of the application is attached. All statements in the application are treated as representations and not warranties. No statement will void this contract or be used in defense of a claim unless the statement is in the application. |
| **Effective Date** | The effective date of this contract is the same as the contract date. |
| **Conformity to State Law** | This contract shall be construed in accordance with and is amended to conform to the laws of the state in which the owner resides at the time of application. |
| **Owner** | This contract's owner is named in the application. The owner may name a new owner or may name a successor to become owner if the owner dies. Such a change will become effective when written notice is received and recorded at our home office. |
| **Assignment** | An absolute assignment will make the assignee the owner of this contract. We will not be responsible for the validity of any assignment. We will not be bound by an assignment until written notice from the owner of the contract is recorded at our home office. This contract may not be assigned as collateral for any loan or indebtedness. |
| **Misstatement of Age or Sex** | If the birthdate or sex of the annuitant has been misstated, any amounts payable will be adjusted. The adjustment will be to an amount the premium would have purchased using the correct birthdate and sex, using the rates in effect on the contract date. We may recoup any overpayment, with compound interest at the rate of 6% per year, by charging against payments made after the adjustment. We will refund any underpayment with compound interest at the rate of 6% per year. |
| **Benefits** | The annuity benefits payable under this contract are those shown in the schedule of benefits. This contract has no cash surrender value. Benefit payments may not be advanced, accelerated, commuted, or encumbered by the annuitant or any beneficiary. |
| **Beneficiary** | The beneficiary is as named in the application unless changed by the owner. There may be more than one beneficiary. |
| **Annuity Payments** | Benefit payments will be made to the annuitant unless otherwise designated in the application. We will make all benefit payments under this contract at our home office by check. We may require evidence that the annuitant is alive on the due date of each payment. If the annuitant dies, any remaining payments will be made to the beneficiary. If there is more than one beneficiary, payments will be made jointly to all surviving beneficiaries. If no beneficiaries live to receive all payments, any remaining payments will be made to the estate of the last surviving beneficiary. If no beneficiaries are alive when the annuitant dies, benefit payments will be made to the estate of the annuitant. |
| **Expiration** | This contract will expire when the last payment set forth on the schedule of benefits has been made. |

L-6417 R1 3/90

MACALUSO_0096

 **SAFECO**°

SAFECO LIFE INSURANCE COMPANY
P.O. BOX 34690
SEATTLE, WASHINGTON 98124-1890

 COPY

### ENDORSEMENT

The provisions of this annuity contract, captioned Assignment, are replaced by the following:

An absolute assignment of this annuity contract will make the assignee the new owner of this annuity contract. We will not be bound by an assignment until written notice from the owner of this annuity contract is recorded at our home office.

No payment under this annuity contract may be accelerated, deferred, increased, or decreased, or anticipated, sold, assigned, or encumbered in any manner by the annuitant (or either joint annuitant) or any other recipient of the payment.

Effective on the Contract Date, unless a different date is shown here: _____

SAFECO Life  Insurance Company

*R. A. Pierson*

R.A. Pierson
Sr. Vice President and Secretary

UNC-26 5/94

° A registered trademark of SAFECO Corporation

COPY

### NAME CHANGE ENDORSEMENT

This Endorsement is made a part of, and should be attached to your policy, contract or certificate (contract).

Hereafter, all contract references to Safeco Life Insurance Company are substituted with Symetra Life Insurance Company.

All terms and conditions or benefits of your current contract, policy or certificate remain the same and all rights and obligation therein are those of Symetra Life Insurance Company.

Signed for Symetra Life Insurance Company by:

Randall H. Talbot, President

George Pagos, Secretary

LA-4035 9/04

MACALUSO_0098



**SAFECO**

## APPLICATION
### SINGLE PREMIUM
### IMMEDIATE ANNUITY

**SAFECO LIFE INSURANCE COMPANY**
P O BOX 34690
SEATTLE WASHINGTON 98124-1690

**1. Proposed Annuitant**

(a) Todd E. Macaluso
First     Middle     Last

(b) 2125 Via Sinalda
No     Street

(c) La Jolla, CA  92037
City and State     ZIP Code

(d) Date of Birth  REDACTED ☐ Female ☒ Male
    M   D   Y

(e) Social Security No ___ REDACTED ___

**2. Joint Annuitant (if any)**

(a) (none)
First     Middle     Last

(b) _____
No     Street

(c) _____
City and State     ZIP Code

(d) Date of Birth  ☐ Female ☐ Male
    M   D   Y

(e) Social Security No _____

(f) Relationship to Proposed Annuitant _____

**3. Owner, If Other Than Proposed Annuitant, is:**

(a) SAFECO Assigned Benefits Service Co.
First     Middle     Last

(b) 15411 NE 51st Street
No     Street

(c) Redmond, WA  98052
City and State     ZIP Code

(d) Owner is ☐ Individual ☒ Corporation ☐ Partnership ☐ Trustee

For Home Office Use Only    OWNER'S ADDRESS
5069 154th PL NE
Redmond. WA 98052

**4. Plan Applied For**
(describe benefits to be paid and dates to commence, attach an additional sheet if more space is required )

**5.** ☒ Check if additional sheet is attached

**6. Beneficiary**

Angela Macaluso
First     Middle     Last   REDACTED

spouse
Date of Birth    Relationship    Social Security No

**7. Contingent Beneficiary**

_____
First     Middle     Last

_____
Date of Birth    Relationship    Social Security No

**8.** Do you intend the replacement or change of any of your existing life insurance or annuity policies in connection with this application for an annuity?
☐ Yes    ☒ No

**Note:** *If one or more of the benefits applied for cease upon death of the annuitant, then it is essential that an authentic record of annuitant's birth be submitted prior to the first annuity payment. This record should be a birth certificate, if available; otherwise a certified copy of church or baptismal record, or certified copy of family record, such as reference to annuitant in family Bible, will be acceptable.*

I (We) represent that the statements and answers recorded on this application are full, complete and true, to the best of my (our) knowledge and belief, and shall form a part of the annuity contract issued hereon, and my (our) acceptance of such annuity shall constitute my (our) ratification of any additions, corrections or changes made in the space provided "For Home Office Use Only " The owner of this annuity will be the applicant  Application is made with the knowledge and consent of the proposed annuitant  I (We) agree that any annuity contract issued upon this application shall be considered a contract of the State in which the owner resides at the time of application

**Agent:** To the best of your knowledge, does the annuity applied for replace any other annuity or life insurance presently in force? ☐ Yes ☒ No

X *Kelly K Newsom*
Signature of Agent
KELLY K NEWSOM     10-96-4560-01

Agency             Stat #
REDMOND, WA    12-14-00
Dated At (City State)    On (Month  Day)
LU 350 R1 5/90

Redmond, WA      Dec. 14, 2000
Dated At (City, State)    On (Month Day)
X *[signature]*
Signature of Applicant*

X Vice President
Title

\* If applicant is corporation or partnership, a corporate officer other than proposed annuitant must **sign and state title.**

MACALUSO_0099



## Application Attachment

SAFECO Life Insurance Company
P O Box 34690, Seattle, WA 98124-1690

Single Premium Immediate Annuity

**Annuitant:** Todd E. Macaluso

**Joint Annuitant:** (none)

### Temporary Benefits

| Benefit Type * | Initial Benefit Amount | Date of First Payment | Number of Payments | Payment Interval | Date of Last Payment | Increase Amount | Increase Interval |
|---|---|---|---|---|---|---|---|
| G | $2,106.76 | 10/11/2017 | 240 | monthly | 09/11/2037 | | |

**\* L = Life Contingent    G = Guaranteed**

00 OCT 12 AM11:55

SAFECO FT. SERVICES

MACALUSO_0100

COPY



# S A F E C O™

## IMMEDIATE ANNUITY

Non-Participating (No Dividends).

Single Premium.

Benefits payable periodically (see schedule).

SAFECO Life Insurance Company, 15411 NE 51st Street, Redmond, WA 98052, (800) 426-7355

(19)

## Qualified Assignment and Release

"Claimant"         # REDACTED

"Assignor"         STATE FARM GENERAL INSURANCE COMPANY

"Assignee"         SAFECO ASSIGNED BENEFITS SERVICE COMPANY

"Annuity Issuer"   SAFECO LIFE INSURANCE COMPANY

"Effective Date"   October 11, 2000

This Agreement is made and entered into by and between the parties hereto as of the Effective Date with reference to the following facts:

A. Claimant has executed a settlement agreement and release dated *October 11*, 2000 (the "Settlement Agreement") that provides for the Assignor to make certain periodic payments to or for the benefit of the Claimant as stated in Addendum No. 1 (the "Periodic Payments"); and

B. The parties desire to effect a "qualified assignment" within the meaning and subject to the conditions of Section 130 (c) of the Internal Revenue Code of 1986 (the "Code").

NOW THEREFORE, in consideration of the foregoing and other good and valuable consideration, the parties agree as follows:

1. The Assignor hereby assigns and the Assignee hereby assumes all of the Assignor's liability to make the Periodic Payments. The Assignee assumes no liability to make any payment not specified in Addendum No. 1.

2. The Periodic Payment constitutes damages on account of personal injury or sickness in a case involving physical injury or physical sickness within the meaning of Sections 104(a)(2) and 130(c) of the Code.

3. The Assignee's liability to make the Periodic Payments is no greater than that of the Assignor immediately preceding this Agreement. Assignee is not required to set aside specific assets to secure the Periodic Payments. The Claimant has no rights against the Assignee greater than a general creditor. None of the Periodic Payments may be accelerated, deferred, increased, decreased and may not be anticipated, sold, assigned or encumbered.

4. The obligation assumed by Assignee with respect to any required payment shall be discharged upon the mailing on or before the due date of a valid check in the amount specified to the address of record.

5. This Agreement shall be governed by and interpreted in accordance with the laws of the State of California.

6. The Assignee may fund the Periodic Payments by purchasing a "qualified funding asset" within the meaning of Section 130(d) of the Code in the form of an annuity contract issued by the Annuity Issuer. All of the rights of ownership and control of such annuity contract shall be and remain vested in the Assignee exclusively.

7. The Assignee may have the Annuity Issuer send payments under any "qualified funding asset" purchased hereunder directly to the payee(s) specified in Addendum No. 1. Such direction of payments

MACALUSO_0102

shall be solely for the Assignee's convenience and shall not provide the Claimant or any payee with any rights of ownership or control over the "qualified funding asset" or against the Annuity Issuer.

8. Assignee's liability to make the Periodic Payments shall continue without diminution regardless of any bankruptcy or insolvency of the Assignor.

9. In the event the Settlement Agreement is declared terminated by a court of law or in the event that Section 130(c) of the Code has not been satisfied, this Agreement shall terminate. The Assignee shall then assign ownership of any "qualified funding asset"

purchased hereunder to Assignor, and Assignee's liability for the Periodic Payments shall terminate.

10. This Agreement shall be binding upon the respective representatives, heirs, successors, and assigns of the Claimant, the Assignor and the Assignee, and upon any person or entity that may assert any right hereunder or to any of the Periodic Payments.

11. The Claimant hereby accepts Assignee's assumption of all liability for the Periodic Payments and hereby releases the Assignor from all liability for the Periodic Payments.

Assignor: **STATE FARM GENERAL INSURANCE COMPANY**

By: _Karen Johns_
*Authorized Representative*

Title: _Claim Team Manager_

Assignee: **SAFECO ASSIGNED BENEFITS SERVICE COMPANY**

By: _Kim McShea Lim_
*Authorized Representative*

Title: _Vice President_

**Approved as to Form and Content:**

**Claimant's Attorney**

Claimant:

# REDACTED

_TODD E. MACALUSO, ESQ._

# ADDENDUM NO. 1

## Description of Periodic Payments

# REDACTED

Periodic payments payable to TODD E. MACALUSO, ESQ.
and his successors and assigns, for and on behalf of Plaintiffs
in discharge of Plaintiffs' obligation to pay attorney fees:

Commencing October 11, 2017, the sum of Two Thousand One Hundred
Six Dollars and 76 cents ($2,106.76) per month, payable on the 11th day
of each month, until September 11, 2037 (240 Guaranteed Monthly Payments)

All attorney fees payments are being made solely for the benefit and
convenience of the Plaintiffs.

**Initials:**

Claimant:___ AB

Assignor: AB

Assignee:__ Kim McShea Esq

MACALUSO_0104

NOV.30'2000 17:25 14082412792      SUMMIT SETTLEMENT SERVICES      #3156 P.004/004

# ADDENDUM NO. 1

## Description of Periodic Payments

# REDACTED

Periodic payments payable to TODD E. MACALUSO, ESQ.
and his successors and assigns, for and on behalf of Plaintiffs
in discharge of Plaintiffs' obligation to pay attorney fees:

Commencing October 11, 2017, the sum of Two Thousand One Hundred
Six Dollars and 76 cents ($2,106.76) per month, payable on the 11th day
of each month, until September 11, 2037 (240 Guaranteed Monthly Payments)

All attorney fees payments are being made solely for the benefit and
convenience of the Plaintiffs.

Initials:

Claimant: _AB_

Assignor: _KX_

Assignee: _Kin McSheas Cien_

# SETTLEMENT AGREEMENT AND RELEASE

This **Settlement Agreement and Release** (the "Settlement Agreement") is made and entered into this ___11th___ day of ___October___, 2000, by and between:

"Plaintiffs"

# REDACTED

"Defendants"    REDACTED

"Insurer"    STATE FARM GENERAL INSURANCE COMPANY

## RECITALS

A.  Plaintiffs filed a complaint against Defendants in the Superior Court, County of San Diego, State of California, Court Action No. REDACTED (the "Complaint"), which complaint arose out of certain alleged negligent acts or omissions by Defendants. In the Complaint, Plaintiffs sought to recover monetary damages as a result of that certain occurrence on or about July 28, 1999, at Pioneer Park, in San Diego, which resulted in physical injuries and personal injuries to Plaintiffs.

B.  Insurer is the liability insurer of the Defendants, and as such, would be obligated to pay any claim made or judgment obtained against Defendants which is covered by its policy with Defendants.

C.  The parties desire to enter into this Settlement Agreement in order to provide for certain payments in full settlement and discharge of all claims which are, or might have been made, the subject matter of the Complaint upon the terms and conditions set forth below.

## AGREEMENT

The parties agree as follows:

**1.0    Release and Discharge**

Settlement Agreement and Release, Page 2

1.1     In consideration of the payments set forth in Section 2, Plaintiffs hereby completely release and forever discharge Defendants and Insurer from any and all past, present or future claims, demands, obligations, actions, causes of action, wrongful death claims, rights, damages, costs, losses of service, expenses and compensation of any nature whatsoever, whether based on a tort, contract or other theory of recovery, which the Plaintiffs now have, or which may hereafter accrue or otherwise be acquired, on account of, or may in any way grow out of, or which are the subject of the Complaint (and all related pleadings) including, without limitation, any and all known or unknown claims for bodily and personal injuries to Plaintiffs, or any future wrongful death claim of Plaintiffs' representatives or heirs, which have resulted or may result from the alleged acts or omissions of the Defendants.

1.2     This release and discharge shall also apply to Defendants' and Insurer's past, present, and future officers, directors, stockholders, attorneys, attorneys-in-fact, agents, servants, representatives, employees, subsidiaries, affiliates, member companies, partners, predecessors and successors in interest, and assigns and all other persons, firms or corporations with whom any of the former have been, are now, or may hereafter be affiliated.

1.3     This release, on the part of the Plaintiffs, shall be a fully binding and complete settlement among the Plaintiffs, the Defendants and the Insurer, and their heirs, assigns and successors.

1.4     The Plaintiffs acknowledge and agree that the release and discharge set forth above is a general release.   Plaintiffs expressly waive and assume the risk of any and all claims for damages which exist as of this date, but of which the Plaintiffs do not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would

<u>Settlement Agreement and Release, Page 3</u>

materially affect Plaintiffs' decision to enter into this Settlement Agreement. The Plaintiffs further agree that Plaintiffs have accepted payment of the sums specified herein as a complete settlement and compromise of matters involving disputed issues of law and fact. Plaintiffs assume the risk that the facts or law may be other than Plaintiffs believe. It is understood and agreed to by the parties that this settlement is a compromise of a doubtful and disputed claim, and the payments are not to be construed as an admission of liability on the part of the Defendants, by whom liability is expressly denied.

1.5    The Plaintiffs hereby waive any and all rights based upon the provisions of California Civil Code Section 1542, which reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing this release, which, if known to him, must have materially affected his settlement with the debtor."

**2.0    <u>Payments</u>**

In consideration of the release set forth above, the Insurer on behalf of the Defendants agrees to pay to the individual(s) named below ("the payee(s)") the sums outlined in this Section 2 below:

2.1    Payments due at the time of settlement as follows:

Cash at Settlement:          $25,000.00 payable to REDACTED and

Todd E. Macaluso, Esq., his attorney

2.2    Periodic payments made according to the schedule as follows (the "Periodic Payments"):

MACALUSO_0108

# REDACTED

00 DEC -7 PM 2: 13
SAFECO REL SERVICES

2.3    Periodic payments payable to TODD E. MACALUSO, ESQ. and his successors and

assigns, for and on behalf of Plaintiffs in discharge of Plaintiffs' obligation to pay

attorney fees:

Commencing October 11, 2017, the sum of Two Thousand One Hundred Six

Dollars and 76 cents ($2,106.76) per month, payable on the 11th day of each

month, until September 11, 2037 (240 Guaranteed Monthly Payments)

All attorney fees payments are being made solely for the benefit and convenience of

the Plaintiffs.

<u>**Settlement Agreement and Release, Page 5**</u>

It is the intention of the parties hereto that all sums set forth above in sub-paragraphs 2.1, 2.2 and 2.3 constitute damages on account of personal injuries or sickness within the meaning of section 104(a)(2) of the Internal Revenue Code of 1986 as amended, in a case involving physical injury or physical sickness within the meaning of section 130(c) of the Internal Revenue Code of 1986 as amended.

**3.0    <u>Payee's Rights to Payments</u>**

Plaintiffs acknowledge that none of the Periodic Payments, or the Payee's rights to such payments, may be accelerated, deferred, increased or decreased by the Plaintiffs or any payee; nor shall the Plaintiffs or any Payee or any other person who becomes a recipient of the Periodic Payments pursuant to the terms of a Qualified Assignment Agreement or by operation of law, have the power to sell, mortgage, encumber or anticipate the Periodic Payments, or the rights to such payments, or any part thereof, by assignment or otherwise.

**4.0    <u>Payee's Beneficiary</u>**

Any payments to be made after the death of any Payee pursuant to the terms of this Settlement Agreement shall be made to such person or entity as shall be designated in writing by Plaintiffs or payee to the Insurer's Assignee. If no person or entity is so designated by Plaintiffs or payee, or if the person so designated is not living at the time of the Payee's death, such payments shall be made to the estate of the Payee. No such designation or any revocation thereof, shall be effective unless it is in writing and delivered to the Insurer's Assignee. The designation must be in a form acceptable to the Insurer's Assignee before such payments are made.

**Settlement Agreement and Release, Page 6**

**5.0    Consent to Qualified Assignment**

5.1    Plaintiffs acknowledge and agree that the Defendants and/or the Insurer may make a "qualified assignment", within the meaning of Section 130(c) of the Internal Revenue Code of 1986, as amended, of the Defendants' and/or the Insurer's liability to make the Periodic Payments set forth in Section 2.2 to SAFECO ASSIGNED BENEFITS SERVICE COMPANY ("the Assignee"). The Assignee's obligation for payment of the Periodic Payments shall be no greater than that of Defendants and/or Insurer (whether by judgment or agreement) immediately preceding the assignment of the Periodic Payments obligation.

5.2    Any such assignment, if made, shall be accepted by the Plaintiffs without right of rejection and shall completely release and discharge the Defendants and the Insurer from the Periodic Payments obligation assigned to the Assignee. The Plaintiffs recognize that, in the event of such an assignment, the Assignee shall be the sole obligor with respect to the Periodic Payments obligation, and that all other releases with respect to the Periodic Payments obligation that pertain to the liability of the Defendants and/or Insurer shall thereupon become final, irrevocable, absolute and non-contingent.

**6.0    Right to Purchase an Annuity**

The Defendants and/or the Insurer, itself or through its Assignee reserve the right to fund the liability to make the Periodic Payments through the purchase of an annuity policy from SAFECO LIFE INSURANCE COMPANY. The Assignee shall be the sole owner of the annuity policy and shall have all rights of ownership. The Assignee may have SAFECO LIFE INSURANCE COMPANY mail payments directly to the Payee(s). The Plaintiffs shall be responsible for maintaining a current mailing address for Payee(s) with SAFECO LIFE INSURANCE COMPANY.

<u>Settlement Agreement and Release, Page 7</u>

**7.0    Discharge of Obligation**

      The obligation of the Assignee to make each Periodic Payment shall be discharged upon the mailing of a valid check in the amount of such payment to the designated address of the Payee(s) named in Section 2 of this Settlement Agreement.

**8.0    Attorney's Fees**

      Each party hereto shall bear all attorney's fees and costs arising from the actions of its own counsel in connection with the Complaint, this Settlement Agreement and the matters and documents referred to herein, the filing of a Dismissal of the Complaint, and all related matters.

**9.0    Hold Harmless**

      In making this agreement, Plaintiffs represent there are no outstanding liens against the proceeds of this lawsuit or settlement.  Should any lien exist contrary to this representation, Plaintiffs agree Plaintiffs are wholly responsible for the satisfaction and will hold the party(s) being released, its insurance company and attorneys harmless for any and all amounts of said lien.

**9.0    Delivery of Dismissal with Prejudice**

      Concurrently with the execution of this Settlement Agreement, counsel for the Plaintiffs shall deliver to counsel for the Defendants or counsel for the Insurer an executed Dismissal with Prejudice of the Complaint.  Plaintiffs hereby authorize counsel for the Defendants and/or counsel for the Insurer to file the Dismissal with the Court and enter it as a matter of record.

**10.0    Representation of Comprehension of Document**

      In entering into this Settlement Agreement, the Plaintiffs represent that Plaintiffs have relied upon the advice of their attorneys, who are the attorneys of their own choice, concerning the legal and income tax consequences of this Settlement Agreement; that the terms of this

Settlement Agreement have been completely read and explained to Plaintiffs by their attorneys; and the terms of this Settlement Agreement are fully understood and voluntarily accepted by Plaintiffs.

**11.0    Court Approval Required**

The parties acknowledge and agree that the terms of this Settlement Agreement are subject to approval by the Court and that the Plaintiffs' attorney will forthwith prepare an appropriate Order approving this settlement in accordance with this agreement and will present same for approval by the Court.

**12.0    Warranty of Capacity to Execute Agreement**

Plaintiffs represent and warrant that no other person or entity has, or has had, any interest in the claims, demands, obligations, or causes of action referred to in this Settlement Agreement, except as otherwise set forth herein; that Plaintiffs have the sole right and exclusive authority to execute this Settlement Agreement and receive the sums specified in it; and that Plaintiffs have not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations or causes of action referred to in this Settlement Agreement.

**13.0    Governing Law**

This Settlement Agreement shall be construed and interpreted in accordance with the laws of the State of California.

**14.0    Additional Documents**

All parties agree to cooperate fully and execute any and all supplementary documents and to take all additional actions, which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Settlement Agreement.

MACALUSO_0113

15.0    **Entire Agreement and Successors in Interest**

This Settlement Agreement contains the entire agreement between Plaintiffs, the Defendants and the Insurer with regard to the matters set forth in it and shall be binding upon and inure to the benefit of the executors, administrators, personal representatives, heirs, successors and assigns of each.

16.0    **Effectiveness**

This Settlement Agreement shall become effective immediately following execution by each of the parties.

Plaintiffs

# REDACTED

# REDACTED

**Settlement Agreement and Release, Page 10**

Approved as to Form and Content:

**Plaintiffs' Attorney**

TODD E. MACALUSO, ESQ.

By: _____

Date: _____10-12-00_____

**Insurer**

STATE FARM GENERAL INSURANCE
COMPANY

By: _____

Name: _____Karen Johns_____

Title: _____Claim Team Manager_____

Date: _____11/2/00_____



MACALUSO_0115

## ANNUITY CONTRACT RATE COMMITMENT
## NON-REVOCABLE

The Defendant (or Assignor) irrevocably agrees to purchase (or cause to purchase) from SAFECO Life Insurance Company the annuity contract described below. SAFECO Life Insurance Company commits to issue the contract at the price shown, provided the entire contract premium, plus the commitment fee, is received by SAFECO Life Insurance Company on or before the premium due date. This commitment will not be binding upon SAFECO Life Insurance Company unless countersigned at its Home Office within ten days after the Commitment date. A copy of this commitment will be returned to the Defendant.

Guaranteed Rate Code: ___LECC___            Agency Name: _SUMMIT SETTLEMENT SERVICES_

Commitment Date: _AUGUST 16, 2000_            Premium Due Date: _OCTOBER 11, 2000_

Duration of Commitment: _____ONE_____ Months _TWENTY-SIX_ Days _____

*The Duration of Commitment is the length of time between the Commitment Date and the Premium Due Date, but shall not be more than eighteen (18) months.*

Proposed Annuitant: __TODD MACALUSO__            Date of Birth: __REDACTED__

Contract Premium:        $ _74,425.00_           **ATTACH THE QUOTE**
Commitment Fee:          $ __75.00__             **OF PROPOSED BENEFITS**
Assignment Fee:          $ _____
Total Amount Due:        $ _74,500.00_

There is no Commitment Fee for the first 30 days. Thereafter it is 1/10 of 1 percent of the Contract Premium for each month or portion of a month for the Duration of Commitment.

        Example:    Commitment is for 3 months 20 days.
                    Commitment Fee is 3/10 of one percent.

For SAFECO Life Insurance Company

                                    STATE FARM MUTUAL INSURANCE COMPANY
                                    Defendant

By _____ FR CUR        By _____ ASSOCIATE
              Title                              SUMMIT SETTLEMENT SERVICES  Title

Date __8-16-00__                       Date __August 16, 2000__

MACALUSO_0116



**SAFECO**
**LIFE INSURANCE**

**STRUCTURED SETTLEMENTS PERIODIC**
**PAYMENT OF ATTORNEY FEES**

NAME(S) OF CLAIMANT(S): ## REDACTED

NAME OF LAW FIRM: MACALUSO, RICE, BAKER & MACALUSO

NAME OF ATTORNEY: TODD E. MACALUSO, ESQ.

SAFECO Life Insurance Company (SAFECO) cannot provide tax advice, so the following information should not be construed as tax advice.

Prior to structuring the attorney fee portion of a structured settlement, you should be aware of the existence of IRS TECHNICAL ADVICE MEMORANDA 9134004, 9134005 and 9134006 and consult your tax advisor.

It is possible you may not achieve the tax consequences you desire if you structure your fee. SAFECO believes adverse tax consequences are even more likely if the settlement includes an assignment of liability to pay attorney fees.

If you wish to structure your attorney fee, sign and return this acknowledgement and hold harmless agreement to SAFECO. SAFECO cannot issue the annuity contract until it receives the properly executed acknowledgement and agreement.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### ACKNOWLEDGEMENT AND HOLD HARMLESS AGREEMENT

I understand "structuring" my fee might not achieve the tax consequences I or my firm desires.

I understand and agree, any risk of adverse tax consequences (federal or state) will be borne by myself and my firm alone.

I accept, regardless of the tax consequences, that I and/or my firm will be paid only as scheduled under the annuity contract. I and/or my firm may not accelerate, defer, increase, decrease or assign the scheduled payments.

I agree to hold SAFECO, its agents and affiliate harmless from any cost, penalties, fees or damages incurred by me or my firm as a result of structuring my fee.

_____
Attorney's Signature, individually and on
behalf of the named law firm

12-13-00
DATE

# EXHIBIT C



**Symetra Assigned Benefits Service Company**
777 108th Avenue NE, Suite 1200 | Bellevue, WA 98004
Mailing Address: PO Box 34734 | Seattle, WA 98124-1734
Phone 1-800-427-1304

## DISCLOSURE STATEMENT ACKNOWLEDGMENT

| Name | Date |
|---|---|
| **Christopher Barclay, Chapter 7 Trustee for Bankruptcy Case no. 16-04214** | **December 22, 2017** |

### Please initial each paragraph below:

_____ **I understand that this transaction is a financial transaction with consequences that I should carefully weigh.**

_____ **I understand that there will be a hearing to complete this transaction and that a judge will decide whether this transaction is in my best interests.**

_____ **I understand that SABSCO will retain an attorney to represent SABSCO in this transaction. I also understand that this attorney DOES NOT represent me or my interests.**

_____ **I am aware that SABSCO cannot determine whether this transaction is in my best interests.**

_____ **I am aware that SABSCO cannot provide me with independent financial advice.**

_____ **I also understand that SABSCO is likely to profit from this transaction.**

▶ SIGN HERE

**Payee/Transferor**

1/17/2018

**Date**

SAB-0107  8/12

Symetra® is a registered service mark of Symetra Life Insurance Company.

Page 1 of 1



Symetra Assigned Benefits Service Company
777 108th Avenue NE, Suite 1200 | Bellevue, WA 98004
Mailing Address: PO Box 34734 | Seattle, WA 98124-1734
Phone 1-800-427-1304

# DISCLOSURE NOTICE REQUIRED BY LAW – CALIFORNIA

| Name | Date Provided |
|------|---------------|
| Christopher Barclay, Chapter 7 Trustee for Bankruptcy Case no. 16-04214 | December 22, 2017 |

You are selling (technically called "transferring") your right to receive your payments under a structured settlement. You should get this disclosure notice at least 10 days before you sign any contract.

---

### IMPORTANT TERMS

You have agreed to sell to the transferee future payments totaling <u>six hundred ninety-eight thousand, three hundred fourteen dollars, and fifty cents</u> (**$698,314.50**) in exchange for a purchase price of <u>three hundred sixty-eight thousand, six hundred eighty-four dollars, and forty-eight cents</u> (**$368,684.48**).

Those future payments have a discounted present value equal to <u>five hundred forty-eight thousand, eight hundred twelve dollars, and six cents</u> (**$548,812.06**), calculated by applying the discount rate of <u>2.60</u> percent utilized by the Internal Revenue Service to value annuities in probate proceedings.

The purchase price to be paid to you was calculated using a discount rate of <u>7.68</u> percent.

The purchase price payable to you is less than the present value of the future payments stated above because the discount rate of your transaction is greater than the rate utilized by the Internal Revenue Service

For comparison purposes:

If you did not sell your right to receive structured settlement payments, but instead borrowed the net amount of $ <u>368,684.48</u> and paid that loan back in installments with each of the payments you are now selling, the equivalent interest rate you would be paying for that loan would be <u>7.68</u>% per year.

---

Symetra® is a registered service mark of Symetra Life Insurance Company.
California
Page 1 of 3

SAB-0050  11/12

To figure the net amount we are paying, we have charged you for the following expenses:

| | |
|---|---|
| Legal Fees (estimate): | NONE |
| Court Filing Fees: | NONE |
| Attorneys' Fees: | NONE |
| Escrow Fees: | NONE |
| Lien Recordation Fees: | NONE |
| Judgment and Lien Record Fees: | NONE |
| Finders' Fees: | NONE |
| Commissions: | NONE |
| Broker or Other Intermediary Fees: | NONE |

for a total of $0.00 in expenses.

You should get independent professional advice about whether selling your structured settlement payments is a good idea for you and for your dependents.

You are advised to seek independent legal or financial advice regarding the transaction and, under the law, the cost of that advice, up to one thousand five hundred dollars ($1,500) will be paid by the transferee, the person or entity to whom you have agreed to transfer and assign the payments in question. The transferee or purchaser's accountant, counsel, or actuary may not advise you in this transaction.

You also should get independent professional advice from an accountant or lawyer experienced in tax matters about any income tax consequences from selling your structured settlement payments.  We cannot give you the name of anyone to advise you.

**Court approval is needed. A court must approve any agreement you sign to sell your rights under a structured settlement. You will not receive any money until the court approves the sale. Court approval could take more than 30 days following the day you sign an agreement selling your rights under a structured settlement.**

A sale of future structured settlement payments will mean that you will no longer receive the future payments that are sold. You are advised to enter into this transaction only after you have carefully considered the consequences of the transaction.

**You may cancel the contract before court approval. You may cancel the agreement selling (or transferring) your rights under a structured settlement without any cost or obligation. You may cancel at any time before the court approves the contract. You will get notice of the date of the court hearing.**

If you want to cancel, you do not need any special form. But, you must cancel in writing. Send your cancellation to:

Symetra Assigned Benefits Service Company
(its successors and/or assigns)
PO Box 34734
Seattle, WA 98124

If you believe that you have been treated unfairly or have been misled, you should contact your local district attorney or the state Attorney General.

I acknowledge that I received this disclosure statement on ___1/17/2018___ .

(date received)

| SIGN HERE | Signature | Date |
|---|---|---|
| | *[signature]* | 1/17/2018 |

### *Purchase and Sale Agreement*

1. <u>Parties</u>:

   This purchase and sale agreement is entered into by and between Christopher R. Barclay ("SELLER"), solely in his capacity as the chapter 7 trustee for the bankruptcy estate of Todd E. Macaluso ("Bankruptcy Estate"), in U.S.B.C. Case No. 16-04214-LT7, P.O. Box 2819, La Mesa, California 91943-2819, and Symetra Assigned Benefits Service Company, ("PURCHASER"), 777 108th Avenue, NE, Suite 1200, SC-10, Bellevue, WA 98004-5135, a Washington Corporation or its designated assigns.

2. <u>Recitals</u>:

   2.1 Todd E. Macaluso ("Debtor") is an individual who was entitled to receive periodic tax-deferred payments ("Annuity Payments") pursuant to Annuity Contract No. AA0770752 (the "Annuity") issued by Symetra Life Insurance Company (the "Annuity Company"). The Debtor received the Annuity Payments pursuant to a Structured Settlement Agreement as payment for the Debtor's outstanding attorneys' fees related to his representation of a client.

   2.2 On July 10, 2016, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of California (the "Bankruptcy Court").

   2.3 The SELLER is the duly authorized and appointed representative of the Bankruptcy Estate pursuant to 11 U.S.C. § 704.

   2.4 Pursuant to an order entered by the Bankruptcy Court on October 13, 2017, the Bankruptcy Estate is now the recipient of the Annuity Payments.

   2.5 The SELLER now desires to sell the Annuity Payments to PURCHASER.

   2.6 The Annuity Payments being sold by this agreement are listed in Exhibit "A" of this agreement.

3. <u>Agreement</u>:

   3.1 Subject to this Agreement and the conditions stated herein, Recitals 2.1 through 2.6, inclusive, are incorporated herein by this reference.

   3.2 Contingent upon Bankruptcy Court approval ("Approval Order") under section 363 and/or 365 of the Bankruptcy Code, and subject to overbidding, SELLER agrees to sell the Annuity Payments listed in Exhibit "A" of this agreement to PURCHASER, for the amount of three hundred sixty-eight thousand, six hundred eighty-four dollars, and forty-eight cents ($368,684.48).

   3.3 The SELLER represents that it will file in the Bankruptcy Case a Motion for Approval of the Sale of the Annuity Payments, (1) seeking approval of the overbid

Initials: _____

procedures; (2) seeking approval of the sale free and clear of all liens, claims, interests and encumbrances, (3) seeking a finding by the Court that the sale either is (a) not subject to the California Structured Settlement Protection Act, codified at California Insurance Code §§ 10134 *et seq.*, or (b) meets the requirements therein; and (4) authorizing the SELLER to consummate the transaction ("Approval Order"). The SELLER'S consummation of the transaction is expressly subject to, and conditioned upon, the Bankruptcy Court's entry of the Approval Order. The Approval Order shall not be subject to any stay of enforcement, including, but not limited to any stay imposed by the Federal Rules of Bankruptcy Procedure, order of the Bankruptcy Court, or order of an appellate court. SELLER agrees that the Approval Order shall be in a form reasonably acceptable to PURCHASER.

3.4 If by no fault or cause of any of the parties hereto this Agreement is not approved by the Bankruptcy Court within ninety (90) days after the date of this Agreement, this Agreement shall be null and void and of no force or effect.

3.5 SELLER agrees that in the event SELLER receives any of the Annuity Payments listed in Exhibit "A" from the annuity issuer or the structured settlement obligor prior to the closing and Bankruptcy Court approval of this agreement, PURCHASER may deduct the aggregate amount of the payments so received by SELLER from the agreed purchase amount. In the event one of the purchased payments is sent to SELLER after the Approval Order is entered, SELLER agrees to hold the payment in trust for Purchaser and to immediately turn over such payment(s) to Purchaser.

3.6 SELLER agrees to revoke any prior beneficiary designation related to the payments being sold, and agrees to name PURCHASER, or its designee, as irrevocable beneficiary.

3.7 In order to effectuate the purposes of this agreement, SELLER grants a security interest (lien) upon all the of SELLER'S right, title and interest to the purchased payments to PURCHASER, in an amount not exceeding the actual dollar amount of the purchased payments. SELLER further authorizes PURCHASER to file financing statements regarding the purchased payments to secure PURCHASER'S rights hereunder.

4. <u>SELLER Acknowledgements and Warranties</u>:

4.1 SELLER acknowledges that PURCHASER has advised that SELLER seek independent professional advice, including legal and accounting advice, regarding this transfer.

4.2 SELLER acknowledges that this transfer is fair and reasonable and in the best interests of creditors of the Bankruptcy Estate.

4.3 SELLER warrants that he has the power and right to enter into this agreement and that the sale will be free and clear of all liens, claims, interests and encumbrances.

Initials: _*Ⱥ*_____

4.4 SELLER is fully aware of its rights under the "Structured Settlement Agreement," and this purchase and sale agreement, and agrees that upon entry of the Approval Order, this purchase and sale agreement terminates any rights Debtor or any of his beneficiaries, heirs, spouse, assigns, agents or representatives have or claim to have in the payments sold.

5. <u>Bankruptcy Sale</u>. All parties acknowledge that SELLER is a party to this Agreement solely in his capacity as Trustee of the Bankruptcy Estate and that in the event of any default in the performance of any of the SELLER'S obligations under the Agreement or in the event that any other claim is asserted against the SELLER or the Bankruptcy Estate in connection with this Agreement, the SELLER shall in no event have any personal liability whatsoever (whether in his individual capacity or otherwise).

6. <u>Controlling Law</u>: This agreement is governed in accordance with federal bankruptcy law, to the extent applicable, and where state law is implicated, by the laws of the state of California. The Bankruptcy Court shall retain exclusive jurisdiction to enforce the provisions of this Agreement until the Bankruptcy Case is closed, after which any litigation concerning the enforcement or interpretation of this Agreement may be brought in any federal or state court of competent jurisdiction in the state of California.

7. Exhibits:

   A. List of payments PURCHASER is buying from SELLER.

   B. Disclosure Statement

8. Signatures:

   By signing below, the parties agree to be bound by all of the terms of this Purchase and Sale Agreement.

DATED this ___10th___ day of ___March___, 2018.

Symetra Assigned Benefits Service Company

Michaelanne Ehrenberg
Vice President and Associate General Counsel
Chief Litigation & Government Affairs Counsel

By: _____

Its: _____

Christopher R. Barclay, solely in his capacity as Chapter 7 Trustee for the Bankruptcy Estate of Todd E. Macaluso, U.S.B.C. Case No. 16-04214-LT7

By: _____

Page 3                                    Initials: ___CB___

STATE OF             )

                       ) ss.

County of            )

       On this_____day of_____, 2018, before me, the undersigned, a Notary Public in and for the State of_____, duly commissioned and sworn, personally appeared Christopher Barclay to me known to be the individual described in and who executed the foregoing instrument, and acknowledged that he signed the same as he free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal the day and year first above written.

_____

Print Name: _____

NOTARY PUBLIC in and for State of        , 
Residing at: _____
My commission expires: _____



A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California    County of _San Diego_ )ss.
On _10 March 2018_ before me, _Sandra Velazquez Zamora_ Notary Public,
personally appeared _Christopher R. Barclay_,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Sandra Velazquez Zamora
COMM. #2195671
NOTARY PUBLIC ● CALIFORNIA
SAN DIEGO COUNTY
Commission Expires May 5, 2021

*Exhibit A*

List of Payments to be Purchased

| <u>Payments to be Sold</u> | <u>Due date(s)</u> |
|---|---|
| $2,984.25 | guaranteed monthly payments commencing April 11, 2018 through and including September 11, 2037 |

**SYMETRA**
RETIREMENT | BENEFITS | LIFE

**Symetra Assigned Benefits Service Company**
777 108th Avenue NE, Suite 1200 | Bellevue, WA 98004 | Phone 1-800-427-1304
Mailing Address: PO Box 34734 | Seattle, WA 98124-1734

## SEEK INDEPENDENT PROFESSIONAL ADVICE

*Symetra Assigned Benefits Service Company (SABSCO) strongly urges you to consult with an independent professional who can advise you of the potential legal, financial and tax implications of your funding transaction.*

| | |
|---|---|
| **Seek legal advice** | You are encouraged to seek independent advice regarding the legal, financial and tax implications of this transfer. Show your advisor the Disclosure Statement and the Purchase and Sale Agreement forms prepared for you by SABSCO. |

By signing below, you acknowledge that SABSCO has advised you in writing of your right to seek — and that you have had the opportunity to seek — independent advice regarding the legal, financial and tax consequences of your funding transaction.

I, ___Christopher Barclay, Chapter 7 Trustee for Bankruptcy Case no. 16-04214___ understand that SABSCO will retain an attorney to represent SABSCO in this transaction. I also understand that this attorney DOES NOT represent me or my interest.

**PLEASE COMPLETE ONLY ONE SECTION**

| | |
|---|---|
| **Sought advice** | ☒ **I have sought and received independent professional advice.**<br>I have sought and received independent professional advice regarding the transfer of my future rights to structured settlement payments from an:<br>☒ Attorney<br>☐ Accountant<br>☐ Actuary<br>☐ Other licensed professional: _____ |
| **Did not seek advice** | ☐ **I have chosen NOT to seek independent professional advice.**<br>I have been advised by SABSCO, in writing, to seek independent professional advice regarding the implications of transferring my future rights to structured settlement payments, including consideration of the legal, financial and tax implications of this transfer. I have chosen to forego the advice of an independent professional regarding this transaction because I understand the legal, financial and tax implications associated with this transfer. |

| | |
|---|---|
| **Signature** | Signature _~~Christopher Barclay~~_   ◄ SIGN HERE<br>Date ___3 / 10 / 2018___ |

| | |
|---|---|
| **Notary Public** | **To be completed by Notary Public**<br><br>This instrument was acknowledged before me on this _____ day of _____, 20___ by<br><br>TO BE NOTARIZED<br>_____<br>Notary Public in and for the State of _____<br>Printed Name: _____<br>Commission Expires: _____ |

SEE ATTACHED CALIFORNIA
ACKNOWLEDGEMENT

SAB-0061  8/12

Symetra® is a registered service mark of Symetra Life Insurance Company.

Page 1 of 1

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )

County of _San Diego_ )

On _10 March 2018_ before me, _Sandra Velazquez Zamora Notary Public_
     Date                        Here Insert Name and Title of the Officer

personally appeared _Christopher R. Barclay_
                             Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

Signature of Notary Public

Sandra Velazquez Zamora
COMM. #2195671
NOTARY PUBLIC • CALIFORNIA
SAN DIEGO COUNTY
Commission Expires May 5, 2021

Place Notary Seal Above

———————————— OPTIONAL ————————————
Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**
Title or Type of Document: _Seek Independent Professional Advice_ Document Date: _03/10/2018_
Number of Pages: _2_ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _Christopher R. Barclay_
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☒ Individual     ☐ Attorney in Fact
☐ Trustee     ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual     ☐ Attorney in Fact
☐ Trustee     ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5907



**SYMETRA**
RETIREMENT | BENEFITS | LIFE

Symetra Assigned Benefits Service Company
777 108th Avenue NE, Suite 1200 | Bellevue, WA 98004
Mailing Address: PO Box 34734 | Seattle, WA 98124-1734
Phone 1-800-427-1304 | Fax 1-800-301-3672

## FUNDS DISTRIBUTION FORM
*Please choose how you wish to receive your funds and complete the appropriate section.*
*Note: with all conditions met — please allow up to 24-48 hours to process your funds after we receive the signed court order.*

| Personal Information | Name: Christopher Barclay, Chapter 7 Trustee for Bankruptcy Case no. 16-04214 | Annuity Contract: AA0770752 |
| --- | --- | --- |
| | Street Address (number and street, city, state, zip): PO Box 2819, La Mesa, California 91943-2819 | Telephone Number |

**Funding Preference**

I want to receive my money by:

☒ **Check*** mailed to my address listed above (or check mailed to address listed below).

*See above*

*Some banks may put a hold on funds until the check clears. Please contact your bank for more information.*

OR

☐ **Wire**** to my bank listed below.
*Some banks may charge a fee for wire transfers. Please contact your bank for more information.*

| Bank Name | Name(s) on Account | Last four of SSN |
| --- | --- | --- |
| ABA (Routing) Number | Account Number | Deposit to ☐ Checking ☐ Savings |

*Please include proof that you are a signer on the account (pre-printed voided check, deposit slip, or bank verification letter).*

*By instructing Symetra Assigned Benefits Service Company (SABSCO) to electronically deposit funds into my account, I agree the deposit(s) will meet any payment obligation for which SABSCO makes the deposit. I also agree that SABSCO may make debit and credit entries to correct any errors related to such deposits.*

**Authorization**

**SIGN HERE** ▶ Payee Signature _____ Date 3/10/18

**TO BE NOTARIZED** ▶

**To Be Completed by Notary Public**

On this day personally appeared before me _____ to me known to be the individual(s) described in and who executed the within and foregoing instrument and acknowledged that he/she signed the same as his/her free and voluntary act and deed for the uses and purposes therein mentioned.

**SEE ATTACHED CALIFORNIA ACKNOWLEDGEMENT**

Given under my hand and official seal this _____ day of _____, 20__.

_____
Notary Public in and for the state of _____
Residing at _____
My commision expires: _____

**Special Instructions**

**Internal Use Only**

SAB-0063 2/16                    Symetra® is a registered service mark of Symetra Life Insurance Company.

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                                      CIVIL CODE § 1189

---

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _San Diego_ )

On _10 March 2018_ before me, _Sandra Velazquez Zamora, Notary Public_
    Date                                   Here Insert Name and Title of the Officer

personally appeared _Christopher R. Barclay_
                                    Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
>
> WITNESS my hand and official seal.
>
> Signature _[signature]_
>               Signature of Notary Public

**Sandra Velazquez Zamora**
COMM. #2195671
NOTARY PUBLIC • CALIFORNIA
SAN DIEGO COUNTY
Commission Expires May 5, 2021

              _Place Notary Seal Above_

---------------------------- **OPTIONAL** ----------------------------

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _Funds Distribution form_ Document Date: _03/10/2018_
Number of Pages: _2_ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _Christopher R. Barclay_ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer — Title(s): ___ | ☐ Corporate Officer — Title(s): ___ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☒ Individual ☐ Attorney in Fact | ☐ Individual ☐ Attorney in Fact |
| ☐ Trustee ☐ Guardian or Conservator | ☐ Trustee ☐ Guardian or Conservator |
| ☐ Other: ___ | ☐ Other: ___ |
| Signer Is Representing: ___ | Signer Is Representing: ___ |

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5907

# EXHIBIT D



Symetra Assigned Benefits Service Company
777 108th Avenue NE, Suite 1200 | Bellevue, WA 98004
Mailing Address: PO Box 34734 | Seattle, WA 98124-1734
Phone 1-800-427-1304

## DISCLOSURE STATEMENT ACKNOWLEDGMENT

| Name | Date |
|---|---|
| **Christopher Barclay, Chapter 7 Trustee for Bankruptcy Case no. 16-04214** | **December 22, 2017** |

### Please initial each paragraph below:

_____    I understand that this transaction is a financial transaction with consequences that I should carefully weigh.

_____    I understand that there will be a hearing to complete this transaction and that a judge will decide whether this transaction is in my best interests.

_____    I understand that SABSCO will retain an attorney to represent SABSCO in this transaction. I also understand that this attorney DOES NOT represent me or my interests.

_____    I am aware that SABSCO cannot determine whether this transaction is in my best interests.

_____    I am aware that SABSCO cannot provide me with independent financial advice.

_____    I also understand that SABSCO is likely to profit from this transaction.

**SIGN HERE** → _____
Payee/Transferor

_____
1/12/18
**Date**

Symetra® is a registered service mark of Symetra Life Insurance Company.
Page 1 of 1



Symetra Assigned Benefits Service Company
777 108th Avenue NE, Suite 1200 | Bellevue, WA 98004
Mailing Address: PO Box 34734 | Seattle, WA 98124-1734
Phone 1-800-427-1304

# DISCLOSURE NOTICE REQUIRED BY LAW – CALIFORNIA

| Name | Date Provided |
|------|---------------|
| Christopher Barclay, Chapter 7 Trustee for Bankruptcy Case no. 16-04214 | December 22, 2017 |

You are selling (technically called "transferring") your right to receive your payments under a structured settlement. You should get this disclosure notice at least 10 days before you sign any contract.

## IMPORTANT TERMS

**You have agreed to sell to the transferee future payments totaling four hundred ninety-two thousand, nine hundred eighty-one dollars, and eighty-four cents** ($492,981.84) **in exchange for a purchase price of two hundred fifty-eight thousand, eight hundred six dollars, and sixteen cents** ($258,806.16).

**Those future payments have a discounted present value equal to three hundred eighty-seven thousand, four hundred thirty-nine dollars, and fifteen cents** ($387,439.15), **calculated by applying the discount rate of** 2.60 **percent utilized by the Internal Revenue Service to value annuities in probate proceedings.**

**The purchase price to be paid to you was calculated using a discount rate of** 7.77 **percent.**

**The purchase price payable to you is less than the present value of the future payments stated above because the discount rate of your transaction is greater than the rate utilized by the Internal Revenue Service**

**For comparison purposes:**

**If you did not sell your right to receive structured settlement payments, but instead borrowed the net amount of $** 258,806.16 **and paid that loan back in installments with each of the payments you are now selling, the equivalent interest rate you would be paying for that loan would be** 7.77 **% per year.**

Symetra® is a registered service mark of Symetra Life Insurance Company.
California
Page 1 of 3

To figure the net amount we are paying, we have charged you for the following expenses:

| | |
|---|---|
| Legal Fees (estimate): | NONE |
| Court Filing Fees: | NONE |
| Attorneys' Fees: | NONE |
| Escrow Fees: | NONE |
| Lien Recordation Fees: | NONE |
| Judgment and Lien Record Fees: | NONE |
| Finders' Fees: | NONE |
| Commissions: | NONE |
| Broker or Other Intermediary Fees: | NONE |

for a total of $0.00 in expenses.

You should get independent professional advice about whether selling your structured settlement payments is a good idea for you and for your dependents.

You are advised to seek independent legal or financial advice regarding the transaction and, under the law, the cost of that advice, up to one thousand five hundred dollars ($1,500) will be paid by the transferee, the person or entity to whom you have agreed to transfer and assign the payments in question. The transferee or purchaser's accountant, counsel, or actuary may not advise you in this transaction.

You also should get independent professional advice from an accountant or lawyer experienced in tax matters about any income tax consequences from selling your structured settlement payments.  We cannot give you the name of anyone to advise you.

**Court approval is needed. A court must approve any agreement you sign to sell your rights under a structured settlement. You will not receive any money until the court approves the sale. Court approval could take more than 30 days following the day you sign an agreement selling your rights under a structured settlement.**

A sale of future structured settlement payments will mean that you will no longer receive the future payments that are sold. You are advised to enter into this transaction only after you have carefully considered the consequences of the transaction.

**You may cancel the contract before court approval. You may cancel the agreement selling (or transferring) your rights under a structured settlement without any cost or obligation. You may cancel at any time before the court approves the contract. You will get notice of the date of the court hearing.**

If you want to cancel, you do not need any special form. But, you must cancel in writing. Send your cancellation to:

> Symetra Assigned Benefits Service Company
> (its successors and/or assigns)
> PO Box 34734
> Seattle, WA 98124

If you believe that you have been treated unfairly or have been misled, you should contact your local district attorney or the state Attorney General.

I acknowledge that I received this disclosure statement on ___1/17/2018___.

(date received)

| SIGN HERE | Signature _Brian Barclay_ | Date _1/17/18_ |
|---|---|---|

*Purchase and Sale Agreement*

1. <u>Parties</u>:

   This purchase and sale agreement is entered into by and between Christopher R. Barclay ("SELLER"), solely in his capacity as the chapter 7 trustee for the bankruptcy estate of Todd E. Macaluso ("Bankruptcy Estate"), in U.S.B.C. Case No. 16-04214-LT7, P.O. Box 2819, La Mesa, California 91943-2819, and Symetra Assigned Benefits Service Company, ("PURCHASER"), 777 108th Avenue, NE, Suite 1200, SC-10, Bellevue, WA 98004-5135, a Washington Corporation or its designated assigns.

2. <u>Recitals</u>:

   2.1 Todd E. Macaluso ("Debtor") is an individual who was entitled to receive periodic tax-deferred payments ("Annuity Payments") pursuant to Annuity Contract No. AA0771522 (the "Annuity") issued by Symetra Life Insurance Company (the "Annuity Company").  The Debtor received the Annuity Payments pursuant to a Structured Settlement Agreement as payment for the Debtor's outstanding attorneys' fees related to his representation of a client.

   2.2 On July 10, 2016, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of California (the "Bankruptcy Court").

   2.3 The SELLER is the duly authorized and appointed representative of the Bankruptcy Estate pursuant to 11 U.S.C. § 704.

   2.4 Pursuant to an order entered by the Bankruptcy Court on October 13, 2017, the Bankruptcy Estate is now the recipient of the Annuity Payments.

   2.5 The SELLER now desires to sell the Annuity Payments to PURCHASER.

   2.6 The Annuity Payments being sold by this agreement are listed in Exhibit "A" of this agreement.

3. <u>Agreement</u>:

   3.1 Subject to this Agreement and the conditions stated herein, Recitals 2.1 through 2.6, inclusive, are incorporated herein by this reference.

   3.2 Contingent upon Bankruptcy Court approval ("Approval Order") under section 363 and/or 365 of the Bankruptcy Code, and subject to overbidding, SELLER agrees to sell the Annuity Payments listed in Exhibit "A" of this agreement to PURCHASER, for the amount of two hundred fifty-eight thousand, eight hundred six dollars, and sixteen cents ($258,806.16).

   3.3 The SELLER represents that it will file in the Bankruptcy Case a Motion for Approval of the Sale of the Annuity Payments, (1) seeking approval of the overbid

Page 1                                                              Initials: _____

procedures; (2) seeking approval of the sale free and clear of all liens, claims, interests and encumbrances, (3) seeking a finding by the Court that the sale either is (a) not subject to the California Structured Settlement Protection Act, codified at California Insurance Code §§ 10134 *et seq.*, or (b) meets the requirements therein; and (4) authorizing the SELLER to consummate the transaction ("Approval Order"). The SELLER'S consummation of the transaction is expressly subject to, and conditioned upon, the Bankruptcy Court's entry of the Approval Order. The Approval Order shall not be subject to any stay of enforcement, including, but not limited to any stay imposed by the Federal Rules of Bankruptcy Procedure, order of the Bankruptcy Court, or order of an appellate court. SELLER agrees that the Approval Order shall be in a form reasonably acceptable to PURCHASER.

3.4 If by no fault or cause of any of the parties hereto this Agreement is not approved by the Bankruptcy Court within ninety (90) days after the date of this Agreement, this Agreement shall be null and void and of no force or effect.

3.5 SELLER agrees that in the event SELLER receives any of the Annuity Payments listed in Exhibit "A" from the annuity issuer or the structured settlement obligor prior to the closing and Bankruptcy Court approval of this agreement, PURCHASER may deduct the aggregate amount of the payments so received by SELLER from the agreed purchase amount. In the event one of the purchased payments is sent to SELLER after the Approval Order is entered, SELLER agrees to hold the payment in trust for Purchaser and to immediately turn over such payment(s) to Purchaser.

3.6 SELLER agrees to revoke any prior beneficiary designation related to the payments being sold, and agrees to name PURCHASER, or its designee, as irrevocable beneficiary.

3.7 In order to effectuate the purposes of this agreement, SELLER grants a security interest (lien) upon all the of SELLER'S right, title and interest to the purchased payments to PURCHASER, in an amount not exceeding the actual dollar amount of the purchased payments. SELLER further authorizes PURCHASER to file financing statements regarding the purchased payments to secure PURCHASER'S rights hereunder.

4. SELLER Acknowledgements and Warranties:

4.1 SELLER acknowledges that PURCHASER has advised that SELLER seek independent professional advice, including legal and accounting advice, regarding this transfer.

4.2 SELLER acknowledges that this transfer is fair and reasonable and in the best interests of creditors of the Bankruptcy Estate.

4.3 SELLER warrants that he has the power and right to enter into this agreement and that the sale will be free and clear of all liens, claims, interests and encumbrances.

Page 2                                            Initials: _____

4.4 SELLER is fully aware of its rights under the "Structured Settlement Agreement," and this purchase and sale agreement, and agrees that upon entry of the Approval Order, this purchase and sale agreement terminates any rights Debtor or any of his beneficiaries, heirs, spouse, assigns, agents or representatives have or claim to have in the payments sold.

5. <u>Bankruptcy Sale</u>.  All parties acknowledge that SELLER is a party to this Agreement solely in his capacity as Trustee of the Bankruptcy Estate and that in the event of any default in the performance of any of the SELLER'S obligations under the Agreement or in the event that any other claim is asserted against the SELLER or the Bankruptcy Estate in connection with this Agreement, the SELLER shall in no event have any personal liability whatsoever (whether in his individual capacity or otherwise).

6. <u>Controlling Law</u>:  This agreement is governed in accordance with federal bankruptcy law, to the extent applicable, and where state law is implicated, by the laws of the state of California.  The Bankruptcy Court shall retain exclusive jurisdiction to enforce the provisions of this Agreement until the Bankruptcy Case is closed, after which any litigation concerning the enforcement or interpretation of this Agreement may be brought in any federal or state court of competent jurisdiction in the state of California.

7. Exhibits:

    A.  List of payments PURCHASER is buying from SELLER.

    B.  Disclosure Statement

8. Signatures:

By signing below, the parties agree to be bound by all of the terms of this Purchase and Sale Agreement.

DATED this ___10th___ day of ___March___ 2018.

Symetra Assigned Benefits Service Company

By: _____
        Michaelanne Ehrenberg
      Vice President and Associate General Counsel
Its Chief Litigation & Government Affairs Counsel

Christopher R. Barclay, solely in his capacity as Chapter 7 Trustee for the Bankruptcy Estate of Todd E. Macaluso, U.S.B.C. Case No. 16-04214-LT7

By: _____

Page 3

Initials: _____

STATE OF                           )

                                      ) ss.

County of                          )

On this_____day of_____, 2018, before me, the undersigned, a Notary Public in and for the State of_____, duly commissioned and sworn, personally appeared Christopher Barclay to me known to be the individual described in and who executed the foregoing instrument, and acknowledged that he signed the same as he free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal the day and year first above written.

_____

Print Name: _____

NOTARY PUBLIC in and for State of        ,
Residing at: _____
My commission expires: _____



A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California    County of San Diego                              }ss.
On 10 March 2018 before me Sandra Velazquez Zamora, Notary Public, personally appeared Christopher R. Barclay
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.  WITNESS my hand and official seal.

Sandra Velazquez Zamora
COMM. #2195671
NOTARY PUBLIC • CALIFORNIA
SAN DIEGO COUNTY
Commission Expires May 5, 2021

*Exhibit A*

List of Payments to be Purchased

<u>**Payments to be Sold**</u>                    <u>**Due date(s)**</u>

$2,106.76                    guaranteed monthly payments commencing April 11,
                             2018 through and including September 11, 2037



**Symetra Assigned Benefits Service Company**
777 108th Avenue NE, Suite 1200 | Bellevue, WA 98004 | Phone 1-800-427-1304
Mailing Address: PO Box 34734 | Seattle, WA 98124-1734

## SEEK INDEPENDENT PROFESSIONAL ADVICE

*Symetra Assigned Benefits Service Company (SABSCO) strongly urges you to consult with an independent professional who can advise you of the potential legal, financial and tax implications of your funding transaction.*

| | |
|---|---|
| **Seek legal advice** | You are encouraged to seek independent advice regarding the legal, financial and tax implications of this transfer. Show your advisor the Disclosure Statement and the Purchase and Sale Agreement forms prepared for you by SABSCO. |

By signing below, you acknowledge that SABSCO has advised you in writing of your right to seek — and that you have had the opportunity to seek — independent advice regarding the legal, financial and tax consequences of your funding transaction.

I, <u>Christopher Barclay, Chapter 7 Trustee for Bankruptcy Case no. 16-04214</u> understand that SABSCO will retain an attorney to represent SABSCO in this transaction. I also understand that this attorney DOES NOT represent me or my interest.

**PLEASE COMPLETE ONLY ONE SECTION**

| | |
|---|---|
| **Sought advice** | ☑ **I have sought and received independent professional advice.**<br>I have sought and received independent professional advice regarding the transfer of my future rights to structured settlement payments from an:<br>☑ Attorney<br>☐ Accountant<br>☐ Actuary<br>☐ Other licensed professional: _____ |
| **Did not seek advice** | ☐ **I have chosen NOT to seek independent professional advice.**<br>I have been advised by SABSCO, in writing, to seek independent professional advice regarding the implications of transferring my future rights to structured settlement payments, including consideration of the legal, financial and tax implications of this transfer. I have chosen to forego the advice of an independent professional regarding this transaction because I understand the legal, financial and tax implications associated with this transfer. |

| Signature | | |
|---|---|---|
| Signature | *[signature]* | ➤ SIGN HERE |
| Date | 3/10/18 | |

| Notary Public | To be completed by Notary Public |
|---|---|

This instrument was acknowledged before me on this _____ day of _____, 20___ by

SEE ATTACHED CALIFORNIA ACKNOWLEDGEMENT

[TO BE NOTARIZED]

_____

Notary Public in and for the State of _____
Printed Name: _____
Commission Expires: _____

Symetra® is a registered service mark of Symetra Life Insurance Company.,

Page 1 of 1

CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT                    CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of San Diego )

On 10 March 2018 before me, Sandra Velazquez Zamora Notary Publ.
      Date                                    Here Insert Name and Title of the Officer

personally appeared Christopher R. Barclay
                                      Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Sandra Velazquez Zamora
COMM. #2195671
NOTARY PUBLIC•CALIFORNIA
SAN DIEGO COUNTY
Commission Expires May 5, 2021

Signature _____
                Signature of Notary Public

Place Notary Seal Above

─────────────────────── OPTIONAL ───────────────────────
Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

Description of Attached Document
Title or Type of Document: Independent Professional Advice  Document Date: 03/10/0018
Number of Pages: 2  Signer(s) Other Than Named Above: _____

Capacity(ies) Claimed by Signer(s)
Signer's Name: Christopher R. Barclay
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☒ Individual        ☐ Attorney in Fact
☐ Trustee           ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual        ☐ Attorney in Fact
☐ Trustee           ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907



SYMETRA
RETIREMENT | BENEFITS | LIFE

**Symetra Assigned Benefits Service Company**
777 108th Avenue NE, Suite 1200 | Bellevue, WA 98004
Mailing Address: PO Box 34734 | Seattle, WA 98124-1734
Phone 1-800-427-1304 | Fax 1-800-301-3672

## FUNDS DISTRIBUTION FORM

*Please choose how you wish to receive your funds and complete the appropriate section.*
*Note: with all conditions met — please allow up to 24-48 hours to process your funds after we receive the signed court order.*

| Personal Information | Name<br>Christopher Barclay, Chapter 7 Trustee for Bankruptcy Case no. 16-04214 | Annuity Contract<br>AA0771522 |
|---|---|---|
| | Street Address (number and street, city, state, zip)<br>PO Box 2819, La Mesa, California 91943-2819 | Telephone Number |

**Funding Preference**

I want to receive my money by:

☑ Check* mailed to my address listed above (or check mailed to address listed below).

*See above*

*Some banks may put a hold on funds until the check clears. Please contact your bank for more information.*

**OR**

☐ Wire** to my bank listed below.

**Some banks may charge a fee for wire transfers. Please contact your bank for more information.*

| Bank Name | Name(s) on Account | Last four of SSN |
|---|---|---|
| ABA (Routing Number) | Account Number | Deposit to  ☐ Checking  ☐ Savings |

*Please include proof that you are a signer on the account (pre-printed voided check, deposit slip, or bank verification letter).*

*By instructing Symetra Assigned Benefits Service Company (SABSCO) to electronically deposit funds into my account, I agree the deposit(s) will meet any payment obligation for which SABSCO makes the deposit. I also agree that SABSCO may make debit and credit entries to correct any errors related to such deposits.*

**Authorization**

`SIGN HERE ▶`    Payee Signature _Simon Barclay_    Date 3/10/2018

`TO BE NOTARIZED ▶`

**To Be Completed by Notary Public**

On this day personally appeared before me
_____ to me known to be
the individual(s) described in and who executed the within and foregoing
instrument and acknowledged that he/she signed the same as his/her free and
voluntary act and deed for the uses and purposes therein mentioned.

Given under my hand and official seal this _____ day
of_____, 20__.

**SEE ATTACHED CALIFORNIA ACKNOWLEDGEMENT**

_____

Notary Public in and for the state of_____
Residing at_____
My commision expires:_____

| Special Instructions | Internal Use Only |
|---|---|

SAB-0063  2/16                                                      Symetra® is a registered service mark of Symetra Life Insurance Company.

CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT                    CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                          )
County of _San Diego_                        )

On _10 March 2018_ before me, _Sandra Velazquez Zamora Notary Publi_
          Date                          Here Insert Name and Title of the Officer

personally appeared _Christopher R. Barclay_
                                Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                Signature of Notary Public

Sandra Velazquez Zamora
COMM. #2195671
NOTARY PUBLIC • CALIFORNIA
SAN DIEGO COUNTY
Commission Expires May 5, 2021

Place Notary Seal Above

────────────────── OPTIONAL ──────────────────
Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

Description of Attached Document
Title or Type of Document: _Funds Distribution form_ Document Date: _03/10/2018_
Number of Pages: _2_  Signer(s) Other Than Named Above: _____

Capacity(ies) Claimed by Signer(s)
Signer's Name: _Christopher R. Barclay_      Signer's Name: _____
☐ Corporate Officer — Title(s): _____   ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General            ☐ Partner — ☐ Limited  ☐ General
☒ Individual      ☐ Attorney in Fact         ☐ Individual      ☐ Attorney in Fact
☐ Trustee         ☐ Guardian or Conservator  ☐ Trustee         ☐ Guardian or Conservator
☐ Other: _____           ☐ Other: _____
Signer Is Representing: _____   Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

## **PROOF OF SERVICE**

I am over the age of eighteen years and am not a party to the within action. I am employed in the County of Orange, State of California, at the law offices of Finlayson Toffer Roosevelt & Lilly LLP, members of the bar of this Court. My business address is 15615 Alton Parkway, Suite 250, Irvine, California 92618. On March 14, 2018, I served ☑ a true copy / ☐ the original of the foregoing document(s) described as:

**CHAPTER 7 TRUSTEE'S MOTION FOR APPROVAL OF SALE OF SYMETRA ANNUITIES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF CHRISTOPHER R. BARCLAY**

✓ **BY CM/ECF NOTICE OF ELECTRONIC FILING**: Pursuant to controlling General Orders, a true copy will be served by the Court via Notice of Electronic Filing ("NEF") and hyperlink to the document. I checked the CM/ECF docket for this case and determined that the parties on the attached Service List are on the Electronic Mail Notice List to receive NEF transmission at the electronic mail addresses noted.

✓ **BY UNITED STATES MAIL**: I enclosed the document(s) in a sealed envelope or package to the parties on the attached Service List and placed it for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

___ **BY OVERNIGHT DELIVERY**: I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the parties on the attached Service List. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

___ **BY ELECTRONIC MAIL**: I caused the document(s) to be sent to the parties on the attached Service List at the electronic mail addresses listed.

___ **BY FACSIMILE**: I faxed the document(s) to the parties on the attached Service List at the fax numbers listed. No error was reported by the fax machine that I used. A fax transmission record was printed, a copy of which is maintained by this office.

___ **BY MESSENGER SERVICE**: I provided the document(s) to a professional messenger service for delivery to the parties on the attached Service List.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct. Executed on March 14, 2018.

_____*/s/ Barbara M. Mendoza*_____
Barbara M. Mendoza

*In re Todd E. Macaluso*
U.S.B.C. S.D. Cal. Case No. 16-04214-LT7

## <u>SERVICE LIST</u>

<u>BY CM/ECF</u>

**Christopher Barclay Trustee**  admin@crb7trustee.com, qcrbarclay2@ecf.epiqsystems.com, mlcunanan@crb7trustee.com

**Jennifer H. Wang on behalf of Creditor Santander Consumer USA Inc.**
       jwang@cookseylaw.com, jwang@ecf.courtdrive.com

**Jesse S. Finlayson on behalf of Trustee Christopher Barclay**
       jfinlayson@ftrlfirm.com, bmendoza@ftrlfirm.com

**Jorge I. Hernandez on behalf of Creditor J.W. Mitchell, Inc.**jorge@jihlaw.com, donna@jihlaw.com

**Kenneth H. Stone on behalf of Creditor Edward E Colson**
       khstone@hotmail.com

**Kira Schlesinger on behalf of Plaintiffs RJC Funding, LLC**
       kira@schlesingerconrad.com

**Kira Schlesinger on behalf of Creditor RJC Funding, LLC**
       kira@schlesingerconrad.com

**Marc Andrews on behalf of Creditor Wells Fargo Bank, National Association**
       andrewma@wellsfargo.com, BankruptcyCLS@wellsfargo.com

**Scott R. Burton on behalf of Defendant Todd E Macaluso**     srburtonatty@aol.com

**Scott R. Burton on behalf of Debtor Todd E Macaluso**srburtonatty@aol.com

**United States Trustee**    ustp.region15@usdoj.gov

<u>BY U.S. MAIL</u>

| | |
|---|---|
| California Franchise Tax Board<br>Bankruptcy Section MS A340<br>Post Office Box 2952<br>Sacramento, CA 95812-2952 | Creditor/lienholder |
| Darren McBratney<br>ZINDER, KOCH & MCBRATNEY<br>15455 San Fernando Mission Blvd., Ste. 409<br>Mission Hills, CA 91345 | Attorneys for creditor/lienholder<br>ALF Recovery Trust |
| Internal Revenue Service<br>P.O. Box 7346<br>Philadelphia, PA 19101-7346 | Creditor/lienholder |

17

1

2   Scott R. Burton                                      Attorney for Debtor, Todd
    LAW OFFICE OF SCOTT R. BURTON                        Macaluso
3   574 S. Rancho Santa Fe Road
    San Marcos, CA 92078

4   American Express Centurion Bank                      Attorneys for creditor American
    C/O BECKET AND LEE LLP                               Express Centurion Bank
5   P.O. Box 3001
    Malvern, PA 19355-0701
6
    Symetra Assigned Benefits Service Company            Buyer
7   777 108th Avenue, NE, Suite 1200, SC-10,
    Bellevue, WA 98004-5135
8
    Medora A. Marisseau                                  Attorneys for Buyer
9   KARR TUTTLE CAMPBELL
    701 Fifth Avenue, Suite 3300
10  Seattle, WA 98104

11  United States Trustee
    Department of Justice                                United States Trustee
12  402 West Broadway, Suite 600
    San Diego, CA 92101
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18